IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| Randall Anderson, Thomas Bauer, William Dahna, Brent Hildahl, Robert Hogeboom, Kenneth Johnson, Charles Leonard, J.B. Linneman, James P. Manna, Reginald Nelson, David Ohlrich, Anthony Pierce, Cameron Polly, James Prevail, David Ransford, James Sandman, Craig Walsh and United Transportation Union Local 418, Plaintiff(s), v. Burlington Northern and Santa Fe Railway Company, a Corporation, Defendant(s). | C03-4110MWB<br><br>**FIRST AMENDED COMPLAINT** |

## NATURE OF CASE

This is an action for declaratory judgment, damages and injunctive relief against Burlington Northern Santa Fe (BNSF) under the Iowa Public Policy Tort Doctrine, to remedy a continuing pattern and practice of intentional retaliation carried out against Plaintiffs for having complied with and for demanding compliance with Federal, BNSF and railroad industry railroad safety requirements, carried out with the purpose and intent of deterring Plaintiffs and others from either complying, demanding compliance, or reporting non-compliance with the described requirements, in the Sioux City, Iowa, Terminal area. The complaint also requests declaration of rights under the Railway Labor Act.

1

## GENERAL ALLEGATIONS

1. Defendant BNSF is a common carrier, the nation's second largest railroad system, with headquarters in Ft. Worth, Texas. Defendant has substantial facilities, track, and train traffic in the State of Iowa and specifically has a terminal and facilities in Sioux City, Iowa. The managers here involved are primarily located in Sioux City, Iowa., one is in Willmar, Minnesota.

2. All named plaintiffs are citizens and residents of the State of Iowa, all residing in or very near Sioux City, Iowa with the exceptions of Nelson, who resides in South Dakota, and Plaintiffs Anderson, Polly and Linneman, who reside in Nebraska. They are train service employees of Defendant BNSF. The group similarly situated includes approximately 120 employees working under authority of the Sioux City Terminal Managers, of whom at least 90 are Iowa residents and most live within 100 (or less) miles of Sioux City, even if residing in South Dakota or Nebraska. Local 418 represents many of the Plaintiffs' and is a labor organization as defined in 45 U.S.C. § 151.

## JURISDICTION

1. The first cause of action is brought under state law, based on the same set of operative facts as the 2d.
2. The second cause of action is under the Railway Labor Act, 45 U.S.C. § 151-156, raising a federal question, 28 U.S.C. § 1331.
3. Defendant BNSF is a Delaware Corporation with its' headquarters and principal place of business located in Texas. The plaintiffs are primarily Iowa residents; none of the Plaintiff's are residents of Texas. Diversity is present under 28 U.S.C., § 1332. The amount in controversy does exceed $75,000.
4. Nearly all the alleged wrongful acts were carried out by officials residing and with offices in Sioux City, Iowa. Nearly all the wrongful acts and orders occurred in were given in, Iowa. The few acts done outside Iowa (in Nebraska or Minnesota) were done within the Sioux City, Iowa, authority area, under the authority of and done by, officials from the Sioux City, Iowa, Terminal Headquarters.

# FACTUAL CLAIMS

1. The Sioux City, Iowa Terminal Management past and present has for at least 15 years perpetrated a pattern and practice of directing employees to non-compliance with safety requirements which continues thru the present, and continues to become more serious. One official has a particularly bad history of threatening and intimidating rail workers at the terminal who engage in standard required inspections, tests and safety practices. Management insists the crews disregard such procedures and requirements in order to expedite train departures and overall operations. BNSF and FRA have many detailed requirements for inspections, required equipment and procedures, which can produce congestion and delay. BNSF local management has attempted to deal with these problems by directing the employees to circumvent many required safety and inspection procedures. Some of these requirements and procedures arise under FRA provisions, some under BNSF Rules; some under both of those, and some under AAR (American Association of Railroads) recommended practices, many of these implemented by BNSF Circulars, Technical Specifications and Bulletins. The acts of Terminal Management are supported and condoned by upper BNSF management. Upper management is and has been fully aware of this behavior by local management and has refused to act.
2. All railroad employees are required by law to obey Federal regulations. They are also subject to discipline or dismissal by BNSF, and civil penalties, including fines and disqualification, if they fail to do so.
3. All railroad employees are required to comply with BNSF operating rules, which often incorporate AAR & Federal requirements and they are subject to dismissal if they fail to do so, even if an officer told them to violate it. Management has unrestricted discretion to dismiss any employee for any claimed reason, even if wholly fabricated at any time.
4. All railroad employees in this terminal face an impossible choice between being dismissed / disciplined if they do perform and comply with required tests, inspections and standards or being disqualified, and fined by the government if they do not perform such inspections and tests. They may also be fired by BNSF

officials in any terminal in the event one of the non-complying trains is inspected. This has created an extremely hostile and hazardous work environment, with regard to safety rule and regulation compliance, since many tests and requirements are being conducted haphazardly or not at all, and the pressure (from BNSF) to choose between obeying the law and maintaining employment creates severe anxiety and fear. BNSF continues these practices and has intensified them. Safety practices which are routine in Lincoln, or the Twin Cities and, almost universally on BNSF are not required or done at the Sioux City, Iowa, terminal. This is and has become well-known to BNSF employees and officers in surrounding terminals, that safety practices are frequently not followed at Sioux City Terminal. These acts of Sioux City Terminal managers are known to and condoned by upper BNSF management.

5. Employees in the Sioux City Terminal have been repeatedly ordered or otherwise coerced to dispense with or not complete required testing of air brake systems on trains prior to departure; to skip many types of inspection of inbound and outbound trains for defective cars; not to switch out and remove defective cars from trains; to run trains without required rear-end and head-end monitoring and communication devices, and many other similar circumventions of rules and regulations. When the employees do perform required safety tests they have been: removed from service, charged with insubordination, threatened with dismissal, berated and screamed at, generally threatened with punishment, and actually punished and singled out for retaliatory adverse treatment.

6. Employees reporting these problems to local or higher BNSF management or to state or federal authorities' are retaliated against harshly and frequently.

7. The employees have attempted all forms of internal efforts to correct or ameliorate these problems.

8. That in fact a great many necessary and required safety tests and inspections are carried out in an incomplete, inadequate and perfunctory method, (if done at all) at Sioux City Terminal as a result of the above acts by Defendant, and many trains are leaving with both known and unknown defects in equipment, and untested

systems which have not had minimally adequate or proper operating tests, or in some cases none at all.

9. That a large volume of traffic moves through Sioux City Terminal, including a substantial volume of hazardous materials of many types, including anhydrous ammonia LP gas, liquid chloride, numerous flammable gases and liquids, ethyl alcohol, a wide variety of chemicals, the tracks are authorized to carry nuclear waste.
10. FRA requirements are not a part of the collective bargaining agreements between UTU, BLE and BNSF, and are not bargainable.
11. BNSF maintains that safety rules, bulletins, and practice manuals are not part of the collective bargaining agreements- BNSF asserts sole discretion over safety requirements as a matter of management prerogative.
12. There is no clause requiring arbitration of safety retaliation issues in the collective bargaining agreements applicable, nor is there any type of provision covering retaliation for safety compliance.

## CAUSE OF ACTION

13. That there is a strong public policy supporting the obedience and enforcement of required and necessary safety procedures and equipment in public transportation, including specifically railroad transport; and the Plaintiff's and other employees acts obeying the rules; refusing orders to disobey or opposing and reporting order to disobey are all protected activities the Iowa Public Policy Tort Doctrine.
14. That the removal from service, threats of dismissal, dismissed, discipline, harassment, punishment and other hostile work environment all constitute adverse employment actions.
15. That the protected activities are the determining factor in the adverse actions.
16. The acts continue to be done and continue to cause apprehension and emotional distress as well as income loss to named and unnamed Plaintiffs, as well as risk to the public and property of Sioux City and areas of track in that RR subdivision.
17. Plaintiff's request actual and punitive damages for all recoverable elements, a declaration of the legal rights and duties of themselves and BNSF, and injunctive

5

relief prohibiting further retaliatory acts. Plaintiffs' request costs and attorneys fees herein.

## 2nd CAUSE OF ACTION

18. Named individuals and labor organizations cannot lawfully, acquiesce, or comply with BNSF's demanded actions.
19. BNSF demands, inter alia: circumvention of safety tests and inspections required and necessary under FRA regulations, BNSF rules, and AAR- industry recommended practices. These demands are illegal under laws of the State of Iowa, the State of Nebraska, and under Federal law and regulation (49 U.S.C § 20101 et seq, 49 CFR Sec. 200 et seq.)
20. Nothing in the collective bargaining agreements permits BNSF to require circumvention of required safety regulations as a condition of employment.
21. A provision or practice requiring such actions in a collective bargaining agreement would be unlawful per se.

## PRAYER FOR RELIEF

Wherefore, Plaintiff's prays all relief afforded at law and equity, including back pay, emotional distress, costs of litigation, attorney's fees and exemplary damages to the extent allowed, all to Plaintiff's damage in the sum of $250,000., and for injunctive relief proscribing the offending conduct in the future, and a declaration of the parties' rights and duties.

Plaintiffs specifically request declarations of law that:

- ❖ Plaintiff labor organizations have a right to strike over BNSF's unlawful practice to dismiss and discipline employees as punishment for performing required tests and inspections.
- ❖ Declaring it to be unlawful and violations of Iowa public policy to require the described violations and circumvention of safety regulations as a condition of employment.
- ❖ That BNSF will be subject to continuing liability under Iowa law for so long as said practices persist.

- ❖ Plaintiff's request an immediate order protecting them from retaliation for having brought this action.

PLAINTIFFS REQUEST TRIAL BY JURY

Dated: _____

                                Scott H. Peters, #PO0004327
                                PETERS LAW FIRM, P.C.
                                233 Pearl Street, P.O. Box 1078
                                Council Bluffs, IA 51502-1078
                                712-328-3157 phone
                                712-328-9092 fax

/s/ *Charles A. Collins*
Charles A. Collins
CHARLES A. COLLINS, P.A.
Labor and Professional Centre
411 Main Street, Suite 410 St. Paul, MN 55102
651-225-1125 phone 651-225-1153 fax

Harry Zanville
500 West Harbor Drive #1213
San Diego, CA 92101
619.231.1781 phone