IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| THOMAS BAUER, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY,<br><br>Defendant. | Civil Action No. C03-4110<br><br>**DEFENDANT'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO DISMISS** |

TABLE OF CONTENTS

Page No.

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. Count One of the Amended Complaint Lacks a Legitimate Legal Foundation ..... 3

A. The CSX and Sereda Decisions: Courts Reject Attempts to Circumvent the Federal Rail Safety Act ..... 3

B. Plaintiffs Have No Cause of Action Under the FRSA ..... 4

C. The Remedy for Plaintiff's Grievances is a Cause of Action Against the Government Under the Administrative Procedures Act and the Hobbs Act ..... 7

1. Agency Investigation of Employee Safety Concerns ..... 7

2. Judicial Review of Investigation and Enforcement Decision ..... 9

3. Plaintiffs Have Not Brought a Proper Claim Against the Correct Entity ..... 10

II. The Federal Railroad Administrative Cannot Be Forced to Intervene or Otherwise Participate in this Action ..... 11

III. There is No Self-reporting Obligation Beyond the Requirements of the Federal Rail Safety Act and Implementing Regulations ..... 13

CONCLUSION ..... 16

APPENDIX ..... 17

## TABLE OF AUTHORITIES

**Page No.**

**Statutes**

Administrative Procedures Act, 5 U.S.C. § 701, et seq. .......... 9, 10

Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. .......... 5

Hobbs Administrative Orders Review Act, 28 U.S.C. § 2342, et seq. .......... 2, 9, 10-12

Federal Rail Safety Act, 49 U.S.C. § 20101, et seq. .......... *passim*

Code of Federal Regulations Title 49--Transportation Subtitle A--Office Of The Secretary Of Transportation, Part 9--Testimony Of Employees Of The Department And Production Of Records In Legal Proceedings, 49 C.F.R. § 9.9, et seq. .......... 2, 12-13

Code of Federal Regulations Title 49—Transportation Subtitle B--Other Regulations Relating To Transportation, Chapter II--Federal Railroad Administration, Department Of Transportation Part 209--Railroad Safety Enforcement Procedures, 49 C.F.R. § 209, et seq. .......... 7-9

Code of Federal Regulations Title 49—Transportation Subtitle B--Other Regulations Relating To Transportation, Chapter II--Federal Railroad Administration, Department Of Transportation Part 216--Special Notice And Emergency Order Procedures: Railroad Track, Locomotive And Equipment, 49 C.F.R. § 216, et seq. .......... 9

Code of Federal Regulations Title 49—Transportation Subtitle B--Other Regulations Relating To Transportation, Chapter II--Federal Railroad Administration, Department Of Transportation, Part 225--Railroad Accidents/Incidents: Reports Classification, and Investigations, 49 C.F.R. § 225, et seq. .......... 14-15

**Court Rules**

Federal Rule of Civil Procedure 19 .......... 11-12

Federal Rule of Civil Procedure 24 .......... 11

Federal Rule of Civil Procedure 45 .......... 2, 12

**Cases**

Abate v. Southern Pacific Transp. Co., 928 F.2d 167 (5th Cir. 1991) .......... 5-6

Atchison, T. & S.F. R.R. v. Pena, 44 F.3d 437 (7th Cir. 1994) .......... 10

Block v. SEC, 50 F.3d 1078 (D.C. Cir. 1995) .......... 10

Cort v. Ash, 422 U.S. 66 (1975) .......... 6

CSX Transportation, Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005) .......... 1, 3-4

DeBiasio v. Illinois Central R.R., 1992 WL 297396 (N.D. Ill. Oct. 8, 1992) .......... 5-6

FCC v. Schreiber, 381 U.S. 279 (1965) .......... 15

Heckler v. Chaney, 470 U.S. 821 (1985) .......... 10

Iowa City-Montezuma Railroad Shippers Ass'n. v. United States, 338 F. Supp. 1383 (S.D. Iowa 1972) .......... 4

Law v. General Motors Corp., 1995 WL 542496 (N.D. Cal. June 15, 1995) .......... 5

Missouri v. Cuffley, 112 F.3d 1332 (8th Cir. 1997) .......... 5, 7

Nippon Yusen Kaisha v. Union Pacific R.R., 2005 WL 1241866 (C.D. Cal. May 10, 2005) .......... 5-6

Sereda v. Burlington Northern Santa Fe Railroad Co., 2005 U.S. Dist. LEXIS 5598 (S.D. Iowa March 17, 2005) .......... 1, 3-4

Skinner v. RLEA, 489 U.S. 602 (1989) .......... 15

Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519 (1978) .......... 15

## INTRODUCTION

On June 6, 2005, the Court issued a decision dismissing four of the five counts against defendant BNSF Railway Company ("BNSF"). As the Court notes, the remaining count asks for a declaratory judgment about two related rail-safety issues:

(1) A definition of BNSF's "duties to report safety violations" to the Federal Railroad Administration ("FRA") or to "commence its own proceedings for potential violations of FRA regulations"; and

(2) A determination of the FRA's duties to commence disqualification proceedings against BNSF.

Opinion of the Court ("Op.") at 11-12; 55.

The Court has requested further briefing on this count in advance of an evidentiary hearing scheduled for July 6, 2005. In particular, the Court has asked the parties for further comment on the "cutting edge legal issues" raised in this case, and specifically the recent decisions in Sereda v. Burlington Northern Santa Fe Railroad and CSX Transportation, Inc. v. Williams and the contentions set out in the letter from the Chief Counsel of the FRA. Op. at 60-63. The Court has also asked the parties to comment on the prospects for involving FRA witnesses (or the FRA itself) in this case. Id. at 60.

BNSF's answers to the Court's inquiries are provided below. In Part I, we address the law governing Plaintiffs' request for a declaratory judgment on rail safety matters, including the Sereda and CSX decisions. We demonstrate that, as a matter of law, the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq., provides the FRA with exclusive discretionary powers over rail safety matters. The FRSA does not, however, create a private right of action for employees against a railroad. Rather, Plaintiffs' remedy under the FRSA is a suit against the FRA itself. 49 U.S.C. § 20114(c).

In Part II, we discuss the prospects for FRA intervention in this case. We explain that the FRA cannot be forced to join this action. Nor is there any prospect for subpoenaing Chief Counsel Mark Lindsey, given the limits of the subpoena power under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45(b). In any event, FRA officers may not testify in legal proceedings except under the procedures set forth in 49 C.F.R. Section 9, which do not permit the appearance of FRA witnesses at a trial or evidentiary hearing. Thus, if Plaintiffs want a declaratory judgment about the FRA's duties and responsibilities, they must bring an action against the FRA under 49 U.S.C. Section 20114(c) and 28 U.S.C. Section 2342(7).

Finally, in Part III, we analyze the Plaintiffs' suggestion that BNSF should have various "self-reporting" duties. Apart from the fact that the FRSA provides no jurisdictional basis for this claim, FRA's regulations cannot be interpreted to require the kind of "self-reporting" that Plaintiffs demand. The regulations include detailed requirements for regular, comprehensive reports from railroads concerning a variety of subjects. To the extent that Plaintiffs want to impose additional requirements, they need to petition the FRA to change its regulations. Such changes cannot be imposed by judicial decision.

* * * *

Before turning to BNSF's specific arguments, it is worth emphasizing, once again, that there *is* a sound, systematic, and statutorily-mandated process in place for regulating rail safety. The FRA's enforcement program for rail safety is real, tough, and comprehensive. To be sure, the Plaintiffs may not like some of the FRA's decisions. But like a federal prosecutor, the FRA has broad discretion to decide when, where, and how to bring enforcement actions concerning alleged safety problems. There is simply no room in this scheme for *ad hoc* judicial regulation arising from employee lawsuits against railroads.

## ARGUMENT

### I. Count One of the Amended Complaint Lacks A Legitimate Legal Foundation.

#### A. *The CSX and Sereda Decisions: Courts Reject Attempts to Circumvent the Federal Rail Safety Act*

Jurisdiction over rail safety matters has, in recent months, been a hot topic in the federal courts. As this Court has observed, at least two other recent cases deal with rail safety or security issues. Like this case, both CSX Transportation, Inc. v. Williams, 406 F.3d 667 (D.C. Cir. 2005) ("CSX") and Sereda v. Burlington Northern Santa Fe Railroad Co., 2005 U.S. Dist. LEXIS 5598 (S.D. Iowa March 17, 2005)("Sereda")[1] address fundamental questions about which branch of government has the power to make decisions about safety in the nation's freight rail transportation network.

In both Sereda and CSX, the courts held that the FRSA provides the *exclusive* avenue for regulation of rail safety. The CSX case arose when the local D.C. government passed a law to regulate rail transportation of hazardous materials in the nation's capital because it believed that the federal government had done an inadequate job in this regard. See 406 F.3d at 672. The Court of Appeals concluded that as long as the federal executive had undertaken to regulate the matter, no other branch of government was entitled to second-guess the suitability of those regulations:

> The FRSA preemption provision, however, authorizes the court *only* to determine whether the regulation covers the subject matter, leaving it to [Department of Transportation] or [Department of Homeland Security] to gauge the efficacy of the security measures based on the agency's expertise. Neither the court nor the District [of Columbia] is authorized or equipped to measure off the adequacy of either agency's strategic determinations.

Id. (emphasis in original).

The Sereda decision by Chief Judge Longstaff in the Southern District of Iowa pursues similar themes. In that case, a former employee brought a state-law claim for retaliation, arguing that he had been fired for reporting alleged railroad safety violations. 2005 U.S. Dist. LEXIS 5598 at *1. BNSF argued there, as here, that Mr. Sereda's claim was governed by the FRSA, which requires employees with safety-related grievances to bring their claims through the dispute resolution mechanisms of the Railway Labor Act. Chief Judge Longstaff agreed, concluding that "Congress intended [the FRSA] to serve as the *exclusive* means by which railroad employees could obtain relief from discrimination based on their reporting of employer safety violations." Id. at *20 (emphasis added).[2]

This case, like Sereda and CSX, constitutes an attempt to circumvent the comprehensive federal regulation of rail safety and impose *ad hoc* standards. Plaintiffs are evidently dissatisfied with the job that FRA is doing, and want the Court to create new, stricter standards for rail safety for BNSF's operations in Sioux City. Although concern about the Plaintiffs' allegations may tempt this Court to enter the world of rail safety regulation, it should refrain from doing so. While the federal judiciary has a role in the regulatory and enforcement scheme, that role belongs to the court of appeals, as will be demonstrated below.

*B. Plaintiffs Have No Cause of Action Under the FRSA*

In many ways, the Sereda and CSX cases were more difficult than this case because they involved questions of federal preemption of state law. Here, Plaintiffs' sole remaining claim

---

[1] This case is only available through LEXIS, and, therefore, for the Court's convenience it is attached hereto as Exhibit 1.

[2] As such, these recent decisions are consistent with older cases that also expressly rejected similar invitations to *ad hoc* judicial regulation of rail safety, such as Iowa City-Montezuma Railroad Shippers Ass'n. v. United States, 338 F. Supp. 1383 (S.D. Iowa 1972). See also BNSF's Brief in Support of Motion to Dismiss at 9-13.

rests on federal law. Indeed, at oral argument, Plaintiffs' counsel admitted that Count One of the Amended Complaint pertains only to federal law. Tr. at 112.

Plaintiffs have been deliberately obscure about exactly which federal law provides the Court with subject-matter jurisdiction over this Count. The Amended Complaint vaguely refers to the Court's "equitable powers" and the "federal common law of labor law." Amd. Comp. ¶ 136. In their briefs, Plaintiffs are similarly vague, asserting that they want a "judicial interpretation of an FRA regulation" (presumably referring to the FRSA regulations cited at paragraphs 122-25 of the Amended Complaint). Plaintiffs' Supp. Post-Hearing Reply Brief at 25-26. Yet they never cite a single federal statute that creates a cause of action.[3]

We are left to surmise, therefore, that Plaintiffs are pursuing this claim under the FRSA itself. See Amd. Comp. ¶ 124 (alleging that "managerial conduct" violates "the conditions established by" the FRSA). In other words, Plaintiffs seem to be suggesting that the FRSA gives federal courts the power to rewrite regulations issued by the FRA.

It is well settled, however, that there is no private right of action against a railroad under the FRSA. See, e.g., Abate v. Southern Pacific Transp. Co., 928 F.2d 167 (5th Cir. 1991).[4] Indeed, this question was addressed in a very recent decision – just over one month ago – by a federal district court in California. In that case, as here, the plaintiff sought to enforce federal

[3] To be sure, the Plaintiffs' "jurisdiction" allegations in their Amended Complaint refer to the Declaratory Judgment Act, 28 U.S.C. § 2201. Amd. Comp. ¶ 2. But as the Eighth Circuit has explained, it has "long been understood that the federal Declaratory Judgment Act . . . is a procedural statute, not a jurisdictional statute." Missouri v. Cuffley, 112 F.3d 1332, 1334 (8th Cir. 1997). Hence, there must be a separate basis under federal law for invoking the court's jurisdiction. Moreover, the "well-pleaded complaint" rule "further limits federal-question jurisdiction to those cases in which the plaintiff's own complaint establishes that the action arises under federal law." Id. at 1334-35.

[4] See also, e.g., Nippon Yusen Kaisha v. Union Pacific R.R., 2005 WL 1241866 (C.D. Cal. May 10, 2005); Law v. General Motors Corp., 1995 WL 542496 (N.D. Cal. June 15, 1995); DeBiasio v. Illinois
Continued

safety regulations by bringing a lawsuit against the railroad. Nippon Yusen Kaisha v. Union Pacific R.R., 2005 WL 1241866 (C.D. Cal. May 10, 2005). The court summarily rejected that claim, concluding that "the FRSA contains no express or implied cause of action authorizing suit by a private individual." Id. at *1. Its decision summarizes the reasoning of the various courts on this point:

> By its terms, the FRSA does not provide a general private right of action to either (1) enforce compliance with safety regulations or (2) seek moneys based on loss caused by violations of those regulations. The stated purpose of the FRSA is to 'promote safety in all areas of railroad operations,' and not merely among the members of a discrete group such as workers or passengers. 'The language of section [20101] is but a command to a federal agency, creating no rights in individuals.' The FRSA specifically vests enforcement of safety standards solely within the power of the Secretary of Transportation. Civil actions under the FRSA may be filed by the Attorney General, but again, only at the request of the Secretary of Transportation. Thus, no express private right of action exists.

Id. at *2 (internal citations omitted).

Likewise, applying the Supreme Court's four-part test from Cort v. Ash, 422 U.S. 66, 78 (1975), there is no implied private right of action under the FRSA:

> [T]he language of the FRSA is a general command to an agency and gives no indication that it was enacted for the express benefit of any one special group. As to the second and most important factor, it is clear that Congress did not intend to create a private right of action. 'Rather than create a private cause of action, the FRSA creates an extensive regulatory scheme that places all authority over safety standards in the hands of the FRA and, in limited circumstances, certain state agencies.' Further, since the 'legislative scheme' leaves enforcement to the FRA and the Attorney General, implying a private right of action would be inconsistent.

Id. at *2 (quoting DeBiasio, 1992 WL 297396 at *3). See also Abate, 928 F.2d 167, 170. In addition, "where no private remedy under the statute is found, none may be implied under its implementing regulations." DeBiasio, 1992 WL 297396 at *4.

---

Central R.R., 1992 WL 297396 (N.D. Ill. Oct. 8, 1992). These unreported cases are attached hereto for the Court's convenience as Exhibits 2 – 4, respectively.

This means, in sum, that there is no subject-matter jurisdiction over Count One of the Amended Complaint. Plaintiffs' Amended Complaint does not "establish[] that [this] action arises under federal law." Cuffley, 112 F.3d at 1334-35. Thus, even if Plaintiffs' concerns about rail safety were legitimate, they cannot obtain judicial review in this fashion.

*C. The Remedy for Plaintiffs' Grievances is a Cause of Action Against the Government Under the Administrative Procedures Act and the Hobbs Act*

The lack of a private right of action against a railroad under the FRSA does not mean that Plaintiffs are simply out of luck and have no way to press their grievances. As the FRA Chief Counsel's letter suggests, there *is* a well-established statutory process available to Plaintiffs, if they choose to use it.

1. Agency Investigation of Employee Safety Complaints

Plaintiffs' remedy begins with the FRA. As explained in the Chief Counsel's letter, the FRSA confers exclusive authority on the FRA (as the Secretary's delegate) to oversee all safety matters within the rail industry. See Letter from S. Mark Lindsey (Aug. 23, 2004) at 2; see also 49 U.S.C. § 20103(a). To that end, the FRA has enacted comprehensive safety regulations that empower it to engage in a wide range of safety investigation and enforcement actions. 49 C.F.R. §§ 209-244.

Many of the FRA's investigations begin with employee complaints. The FRA's Operating Practices Compliance Manual contains detailed guidelines for receiving and resolving complaints from railroad workers. See FRA Office of Safety Assurance and Compliance, Operating Practices Division Manual (June 1, 2003) ("Compliance Manual") (See attached Ex. 5) at 7-1 to 7-13. It notes that "FRA receives inquiries and complaints covering a wide range of issues from a variety of sources from within the rail industry as well as from the general public." Id. at 7-2. The Manual requires handling of complaints "from start to finish: logging-in,

assigning numbers, acknowledging, investigating, closing out, and keeping the file." Id. Each complaint must be investigated by an inspector, who is required to "determine the facts of the case, report the findings, and provide an analysis." Id. at 7-8. This initial investigation may involve interviews, review of pertinent records, and an on-site inspection. Id. at 7-8 to 7-9.

After conducting an initial investigation, the FRA has broad discretion to decide whether or not to bring an enforcement action. See 49 C.F.R. Part 209 App. A; Compliance Manual at 2-4, 7-9. Chapter 4 of the Manual contains detailed guidelines for inspectors in deciding how to proceed if a complaint reveals a potential violation. It notes that:

> FRA may exercise its prosecutorial discretion. It can select which cases to pursue based on its limited resources and on what it believes to be the best method of promoting compliance.

Id. at 4-2. Among the factors that FRA uses in deciding whether to proceed are: (1) the inherent seriousness of the condition or action; (2) the kind and degree of potential safety hazard the condition or action poses in light of the immediate factual situation; (3) any actual harm to persons or property already caused by the condition or action; (4) the offending person's general level of current compliance as revealed by the inspection as a whole; and (5) the person's recent history of compliance. Id. at 7-9.

If the FRA decides to pursue an enforcement action, it may invoke the policies and procedures detailed in 49 C.F.R. Part 209. Under this Part, the FRA may:

- serve requests for written admissions (§ 209.6);
- serve subpoenas "in any matter related to enforcement of the railroad safety laws" (§ 209.7);
- conduct depositions (§ 209.8);
- impose civil penalties (§ 209.101);

- hold hearings (§ 209.115; §209.209, § 209.321);
- hear appeals (§ 209.121; 209.213, § 209.327);
- refer matters to the Department of Justice for criminal prosecution (§ 209.133);
- issue notices of investigation (§209.203);
- issue compliance orders (§ 209.201);
- initiate administrative proceedings "relating to the determination of an individual's fitness for performing safety-sensitive functions." (§ 209.301);
- issue disqualification orders (§ 209.335);
- and require reporting on remedial actions (§ 209.401-409).

General agency policy on enforcement proceedings and penalties is explained in great detail in Appendix A to Part 209 at 36-56.

Alternatively, the FRA may invoke its separate power to issue emergency orders under 49 U.S.C. Section 20104 and 49 C.F.R. Section 216. This power allows FRA inspectors to immediately disqualify potentially unsafe railroad equipment or track from use, subject to a right of appeal by the affected entity. 49 C.F.R. § 216.

2. Judicial Review of Investigation and Enforcement Decisions

Individuals or entities who are unhappy with the results of an FRA investigation or enforcement action must bring a lawsuit ***against the government*** in federal court. The procedures for doing so are established by the FRSA, the Administrative Procedure Act ("APA"), 5 U.S.C. Section 701 et seq., and the Hobbs Administrative Orders Review Act, 28 U.S.C. Section 2342. Which procedure will apply depends upon the precise nature of the complaint. If an employee is aggrieved by a failure to impose an emergency order because of an alleged risk of imminent physical injury, then the employee's remedy is an action against the

Secretary of Transportation. 49 U.S.C. § 20104(c).

Otherwise, an action to "enjoin, set aside, suspend (in whole or in part), or to determine the validity" of "final agency action" by the FRA must be brought in the court of appeals.[5] 28 U.S.C. § 2342; 49 U.S.C. § 20114(c). See also Atchison, T. & S.F. R.R. v. Pena, 44 F.3d 437, 441 (7th Cir. 1994) ("Section 2342(7) of Title 28 confers exclusive jurisdiction upon the appropriate court of appeals to enjoin, set aside, suspend, or to determine the validity of all final agency actions with respect to federal railway safety laws."). Thus, a party that is aggrieved by the failure of FRA to investigate an alleged safety problem must bring an action in the court of appeals (unless it presents a risk of "imminent physical injury"). And again, the proper defendant is the government, not the railroad.

3. Plaintiffs Have Not Brought a Proper Claim Against the Correct Entity

In this case, Plaintiffs have utterly failed to follow these statutory procedures. As the FRA's Chief Counsel notes, Plaintiffs have not pursued the administrative complaint process or cooperated in any investigation. Lindsey Letter at 2-3. Nor have they brought an action against the Secretary of Transportation, the FRA, or any other governmental entity in the court of appeals. By filing this amorphous action against BNSF, Plaintiffs have brought the wrong claim against the wrong party in the wrong court.

In their briefs and during oral argument, Plaintiffs never addressed this fundamental

[5] The APA provides that in a lawsuit challenging final agency action, the reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," or "hold unlawful and set aside agency action" found to be (1) arbitrary, capricious, or otherwise not in accordance with law, (2) contrary to constitutional rights or powers, (3) in excess of statutory jurisdiction, (4) lacking in procedures required by law, (5) unsupported by substantial evidence, or (6) unwarranted by the facts. 5 U.S.C. § 706. In general, prosecutorial discretion – including an agency's refusal to pursue civil enforcement proceedings – is unreviewable under the APA. Heckler v. Chaney, 470 U.S. 821, 831 (1985). But there is an exception if the agency has adopted a general policy so extreme as to amount to an abdication of its statutory responsibilities. Block v. SEC, 50 F.3d 1078, 1082 (D.C. Cir. 1995).

problem with their claim. At one point, they suggest that it would be "futile" to pursue a "declaratory order" from the FRA under Section 554(e) of the APA. Plaintiffs' Supp. Br. at 26. That is a complete *non sequitor.* BNSF has never suggested that Plaintiffs can or should pursue a declaratory order under Section 554(e). Rather, they need to sue the Secretary of Transportation under 28 U.S.C. Section 2342(7) and 49 U.S.C. Section 20114(c) if they seek a change the FRA's enforcement policies and practices in Sioux City.[6]

## II. The Federal Railroad Administration Cannot Be Forced to Intervene or Otherwise Participate In This Action.

As the Court notes, Plaintiffs have stated that "they will not object to and would welcome FRA as an intervener on BNSF's behalf in this case." Op. at 59-60; Plaintiffs' Supp. Br. at 27, n.17. The Court asks the parties to address the "legality and appropriateness" of this suggestion.

Intervention in an ongoing case is governed by Rule 24 of the Federal Rules of Civil Procedure. It provides for both intervention as of right and permissive intervention. Fed. R. Civ. P. 24(a)-(b). The rule clearly contemplates, however, that an individual or entity with a right to intervene has a choice whether to do so or not. In particular, it states that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided for in Rule 5." Id. at (c). BNSF is not aware of any procedure under which a third party – government agency or otherwise – may be forced to intervene under Rule 24 against its will. A third party may, however, be brought into an existing lawsuit under Rule 19 if "subject to service of process" and

[6] Plaintiffs also argue that their only alternative to following "illegal orders" by the railroad is to commit "labor suicide" by quitting. Op. at 56-57. That is not so. They can complain to FRA or file a lawsuit against the government if they believe their complaints are being unfairly denied. The FRSA protects employees from discharge or discrimination by their employer in connection with safety-related complaints. See 49 U.S.C. § 20109(a).

if the entity is one "whose joinder will not deprive the court of jurisdiction over the subject matter of the action." Fed. R. Civ. P. 19(a).

Adding the FRA as a party in this proceeding is neither legally possible nor practically appropriate. Following the conference call with the Court on June 24, 2005, counsel for BNSF spoke to Jonathan Kaplan, an FRA attorney, about the possibility of FRA participation in this action. Apparently, consistent with FRA Deputy Counsel Michael Haley's recent statements to the Court, Mr. Kaplan told BNSF counsel in no uncertain terms that FRA will not intervene voluntarily in this action under Rule 24, and will contest any effort to force it to intervene. Nor is there any possibility of joining the FRA as a party under Rule 19. Among other things, the FRA cannot participate as a party in this proceeding because any action against it under the FRSA must be brought in the court of appeals. 28 U.S.C. § 2342(7).

Given the FRA's unwillingness to participate in this action voluntarily, the Court has also mentioned the prospect of subpoenaing FRA Chief Counsel Lindsey. Op. at 62. That seems impractical, given that Mr. Lindsey (and other FRA officials in Washington, D.C.) are well beyond the geographic subpoena powers of this Court under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45(b)(2). But even if he were within the Court's power, a subpoena to an FRA officer would be fraught with difficulties. Just as it would be awkward to subpoena an Assistant United States Attorney to appear as a witness and explain his or her criminal prosecutorial decisions in a civil action, asking the FRA to explain its investigation and enforcement actions as a third party witness in this proceeding would be problematic, at best.

Moreover, the participation of FRA witnesses in civil proceedings between private litigants is subject to various restrictive regulations. See 49 C.F.R. Part 9. Among other things, those regulations provide that "[a]n employee shall not provide testimony at a trial or hearing.

An employee's testimony shall be limited to a single deposition, affidavit, or set of interrogatories . . . ." 49 C.F.R. § 9.9(d). The regulations also provide that in order to secure testimony from the FRA, a party must submit a proper request to the agency as provided in 49 C.F.R. Section 9.15.

Accordingly, the FRA cannot and will not participate in this proceeding as either witness or intervener. Rather, if it is to respond to Plaintiffs' claims, then it must do so as a defendant after being sued in the appropriate forum. If Plaintiffs want judicial review of the FRA's enforcement actions, then they must bring an action against the Secretary of Transportation, under the procedures explained above. But as things now stand, Plaintiffs have sued the wrong party. This action should be dismissed, and Plaintiffs should be given leave to file a new lawsuit in the proper forum against an appropriate defendant.

## III. There is No Self-Reporting Obligation Beyond the Requirements of the Federal Rail Safety Act and Implementing Regulations.

Finally, even if there were a private right of action under the FRSA, Plaintiffs are not, as matter of law, entitled to the sort of declaratory judgment they seek. As the Court notes in its recent Opinion, Plaintiffs want a declaratory judgment "defining BNSF's duties to report safety violations" and to "commence its own proceedings for potential violations of FRA regulations." Op. at 55. In other words, Plaintiffs want a judicial interpretation of the FRSA and the governing regulations. More specifically, they want a judicial gloss on the regulations, adding a new duty that is not express in existing reporting obligations.

On its face, the FRSA does not impose the sort of duties that Plaintiffs seek to create. Indeed, the statute itself imposes few, if any, rail safety duties directly on the railroads. Rather, the FRSA authorizes and directs the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103(a). The statute also provides

for uniformity in state regulation, 49 U.S.C. § 20106, creates the power to issue emergency orders, 49 U.S.C. § 20104, and authorizes the Secretary to conduct inspections and investigations. 49 U.S.C. § 20107(a). But the real substance of the railroads' safety duties is left for the regulations.

In developing those regulations, the FRA certainly did not neglect the subject of railroad reporting duties. Indeed, the regulations on railroad reporting – at 49 C.F.R. Part 225 – are comprehensive and specific. Their purpose is to "provide the [FRA] with accurate information concerning the hazards and risks that exist on the Nation's railroads." 49 C.F.R. § 225.1. To that end, the regulations require the following:

(1) Immediate telephonic reporting of certain kinds of accidents and incidents, including accidents or incidents that result in death, serious injury, significant damage, or disruptions of passenger service. 49 C.F.R. § 225.9.

(2) Regular monthly reporting of other kinds of accidents and incidents, including highway-rail grade crossing accidents or incidents, collisions, derailments, fire, explosions, acts of God, and other events involving the operation of on-track equipment that results in damage above a particular threshold, deaths, injuries, and occupational injuries. 49 C.F.R. § 225.11; 225.19.

(3) Adoption of an "Internal Control Plan" by each railroad, which shall include, *inter alia*, a policy statement "declaring the railroad's commitment to complete and accurate reporting of all accidents, incidents, injuries, and occupational illnesses arising from the operation of the railroad, to full compliance with the letter and spirit of FRA's accident reporting regulations, and to the principle, in absolute terms, that harassment or intimidation of any person that is calculated to discourage or prevent such person from receiving proper medical treatment or from reporting such accident, incident, injury or illness will not be permitted or tolerated and will result in some stated disciplinary action against any employee, supervisor, manager, or officer of the railroad committing such harassment or intimidation." 49 C.F.R. §225.33(a)(1).

(4) Creation of "procedures to process complaints from any person about" violations of the Internal Control Plan policies," and "to impose the appropriate prescribed disciplinary actions on each employee, supervisor, manager, or officer of the railroad found to have violated the policy." Railroads must disclose these complaint procedures to all railroad employees and "provide 'whistle blower' protection to any person subject to this policy." 49 C.F.R. § 225.33(a)(2).

(5) Maintenance of, *inter alia,* computer reporting systems and data, internal review procedures, assembly of cost data, "adequate communication between the railroad department responsible for submitting accident and incident reports to FRA," procedures for updating of information reported to FRA, and a railroad officer "responsible for auditing the performance of the reporting function." 49 C.F.R. § 225.33(a)(3)-(9).

There is nothing in these regulations, however, that requires BNSF to "self-report" in the fashion desired by Plaintiffs. FRA has chosen to base its investigation and enforcement decisions – the "Safety Assurance and Compliance Program" – on a cooperative approach that relies on inspector discretion, targeted enforcement, system-wide audits, and railroad self-reporting. See FRA Compliance Manual at 3-4. Plaintiffs may prefer a different approach, but there is no legal foundation for second-guessing the FRA on this score.

Indeed, it should go without saying that parties may not obtain modification of administrative regulations through judicial review. In Vermont Yankee Nuclear Power Corp. v. NRDC, 435 U.S. 519 (1978), the Supreme Court held that "[a]bsent constitutional constraints or extremely compelling circumstances," an agency is free to fashion its own rules. Id. at 543-44. See also id. at 524-25 ("[T]his Court has for more than four decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments.").[7] And in this case, the FRSA itself plainly leaves no room for judicial modification of the FRA's regulations. As BNSF has noted previously, the FRA's authority is "exclusive." 49 U.S.C. § 20111(a). See also, Skinner v. RLEA, 489 U.S. 602, 629 n.9 (1989) (declining to second-guess FRA regulations

[7] See also, FCC v. Schreiber, 381 U.S. 279, 290 (1965) (noting that this principle is "an outgrowth of the congressional determination that administrative agencies and administrators will be familiar with the industries which they regulate and will be in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved.").

concerning drug and alcohol testing). Because the FRA has exclusive authority in this area, Plaintiffs' request for new *de facto* regulations must be rejected.

## CONCLUSION

For the reasons stated above and in its other briefs, BNSF respectfully requests that the Court dismiss Count One of the Amended Complaint for lack of subject-matter jurisdiction and/or for failure to state a claim.

/s/ David M. Pryor
The BNSF Railway Company
2500 Lou Menk Drive, AOB-3
Fort Worth, Texas 76131-2828
Telephone: (817) 352-2358
Facsimile: (817) 352-2399
david.pryor@bnsf.com

/s/ Mary Funk
/s/ Thomas Cunningham
NYEMASTER, GOODE, WEST, HANSELL &
O'BRIEN, P.C.
700 Walnut, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-8045
mef@nyemaster.com

/s/ Donald J. Munro
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, D.C. 20001
Telephone: (202) 346-4000
Facsimile: (202) 346-4444
dmunro@goodwinprocter.com

Attorneys for Defendant BNSF Railway Company

July 1, 2005

APPENDIX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 | Sereda v. Burlington Northern Santa Fe Railroad Co., 2005 U.S. Dist. LEXIS 5598 (S.D. Iowa March 17, 2005) |
| Exhibit 2 | Nippon Yusen Kaisha v. Union Pacific R.R., 2005 WL 1241866 (C.D. Cal. May 10, 2005) |
| Exhibit 3 | Law v. General Motors Corp., 1995 WL 542496 (N.D. Cal. June 15, 1995) |
| Exhibit 4 | DeBiasio v. Illinois Central R.R., 1992 WL 297396 (N.D. Ill. Oct. 8, 1992) |
| Exhibit 5 | FRA Office of Safety Assurance and Compliance, Operating Practices Division Manual (June 1, 2003) ("Compliance Manual") |