Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. Lexis 5598**

*2005 U.S. Dist. LEXIS 5598, \**

VICTOR SEREDA, Plaintiff v. BURLINGTON NORTHERN SANTA FE RAILROAD COMPANY,
Defendant

CIVIL NO. 4:03-CV-10431

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA, CENTRAL
DIVISION

2005 U.S. Dist. LEXIS 5598

March 17, 2005, Decided

**DISPOSITION:** Defendant's motion for summary judgment was granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff track inspector claimed that he was fired by
defendant railroad in violation of an alleged public policy prohibiting retaliation against
employees for reporting their employer's railroad safety violations. The railroad moved
for summary judgment and claimed that the inspector's wrongful discharge claim was
preempted by the Federal Railroad Safety Act (FRSA), specifically 49 U.S.C.S. § 20109
(c), inter alia.

**OVERVIEW:** The inspector's duties required him to inspect the railroad track and
remedy defects. Remedial actions included manual labor. Back surgery left the inspector
with a permanent lifting restriction of between 35 and 40 pounds. The inspector
repeatedly reported track defects and hazardous conditions near the railroad's depot,
which were passed on to his supervisors and the Federal Railroad Administration. He was
asked to repair certain defects by performing duties which conflicted with his lifting
restriction; he refused, and the railroad terminated him. The court held that the FRSA's
text and its legislative history, both before and after certain precedent cited by the
inspector, demonstrated Congress's intent that 49 U.S.C.S. § 20109(c) serve as a
railroad employee's exclusive remedy against whistleblower discrimination. The
authorities the inspector presented were entirely unpersuasive on the issue of FRSA
preemption of his state wrongful discharge claim. The inspector presented ample
evidence in support of his claim, and his allegations, if true, were troubling for the court.
His remedy, however, was in a proceeding under § 3 of the Railway Labor Act, 45
U.S.C.S. § 153.

**OUTCOME:** The railroad's motion for summary judgment was granted, and the
inspector's motion for certification was dismissed.

**CORE TERMS:** whistleblower, railroad, legislative history, retaliation, preemption, track,
summary judgment, state common law, public policy, state law, preemptive, preempt, lifting,
wrongful discharge claim, wrongful discharge, preemptive effect, moving party, certification,
grievance, reporting, election of remedies, track inspector, nonpreemption, regulations, pre-
empted, remedial, repairs, depot, Rail Safety Improvement Act, Energy Reorganization Act

**LexisNexis(R) Headnotes ♦** Hide Headnotes

# EXHIBIT 1

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 5598

Page 2 of 9

Civil Procedure > Summary Judgment > Burdens of Production & Proof 🔖
Civil Procedure > Summary Judgment > Summary Judgment Standard 🔖
HN1🔖 Summary judgment is appropriate only when the record, viewed in the light most
favorable to the nonmoving party, presents no genuine issues of material fact and
the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).
The burden is on the moving party to set forth sufficient evidence to show there are
no genuine issues of material fact and that the movant is entitled to judgment as a
matter of law. If the moving party carries its burden under Rule 56(c), then the
party resisting the motion must go beyond the pleadings, and by her own
affidavits, or by the depositions, answers to interrogatories, and admissions on file,
designate specific facts showing that there is a genuine issue for trial. If the
resisting party fails to do so, then the moving party is entitled to summary
judgment. More Like This Headnote

Constitutional Law > Supremacy Clause 🔖
HN2🔖 The Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, is the
wellspring of preemption doctrine. The doctrine mandates that state law must give
way when it conflicts with or frustrates federal law. Preemption is fundamentally a
question of congressional intent, and when Congress has made its intent known
through explicit statutory language, the courts' task is an easy
one. More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers 🔖
Transportation Law > Rail Transportation > Maintenance & Safety 🔖
HN3🔖 The Federal Railroad Safety Act (FRSA), in particular 49 U.S.C.S. § 20109(a), (c),
protects railroad employees who report safety concerns from discrimination and
provides a mechanism for the resolution of claims of retaliation against employee
whistleblowers. Although the FRSA contains a general preemption provision, 49
U.S.C.S. § 20106, Congress' intent to preempt state common law claims is best
evidenced by the explicit terms of § 20109(c), which mandates that a dispute,
grievance, or claim arising under this section is subject to resolution under § 3 of
the Railway Labor Act, 45 U.S.C.S. § 153. This specific remedial scheme illustrates
a congressional intent that the FRSA remedy for railroad "whistleblowers" be
exclusive. More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers 🔖
Transportation Law > Rail Transportation > Maintenance & Safety 🔖
HN4🔖 Any claim by a railroad employee which invokes the Federal Railroad Safety Act's
whistleblower protections is subject to mandatory dispute resolution under 49
U.S.C.S. § 20109(c). More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers 🔖
Transportation Law > Rail Transportation > Maintenance & Safety 🔖
HN5🔖 The mandatory phrasing of 49 U.S.C.S. § 20109 stands in stark contrast to the
permissive language employed in similar statutes with employee protection
remedial provisions, such as the ERA, 42 U.S.C.S. § 5851(b)(1), the OSHA, 29
U.S.C.S. § 660(c)(2), and the Commercial Motor Vehicle Safety Act, 49 U.S.C.S. §
31105(b)(1). Under those statutes, an aggrieved employee "may" file a complaint
with the Secretary of Labor if the employee believes there has been discrimination
based on whistleblowing activities. Such permissive language implies that a
covered employee remains free to pursue a claim under any available remedy,
whereas the FRSA's language directs a railroad employee who wishes to invoke the
FRSA's whistleblower protections to utilize the specific remedy provided by 49
U.S.C.S. § 20109(c). More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers
Transportation Law > Rail Transportation > Maintenance & Safety
HN6 The Federal Railroad Safety Act, specifically 49 U.S.C.S. § 20109, preempts state
   common law remedies protecting railroad whistleblowers is not undermined by the
   statute's inclusion of an election of remedies provision.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers
Transportation Law > Rail Transportation > Maintenance & Safety
HN7 49 U.S.C.S. § 20109(d) allows an aggrieved railroad employee to pursue either a §
   20109(c) proceeding alleging wrongful discharge for reporting an employer's safety
   violations or a claim alleging wrongful discharge for some other reason - disability
   discrimination, for example - protected under another provision, but not both, as
   both would be predicated on the same allegedly unlawful discharge. If, however,
   the railroad employee elects to proceed on the theory that the discriminatory act is
   in retaliation for whistleblowing, the procedure of § 20109(c) must be
   utilized.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers
Transportation Law > Rail Transportation > Maintenance & Safety
HN8 The Federal Railroad Safety Act's, in particular 49 U.S.C.S. § 20109(c), legislative
   history unmistakably supports the conclusion that Congress intends 49 U.S.C.S. §
   20109(c) to serve as the exclusive means for enforcing whistleblower retaliation
   claims advanced by railroad employees.  More Like This Headnote

Labor & Employment Law > Wrongful Termination > Whistleblowers
Transportation Law > Rail Transportation > Maintenance & Safety
HN9 The legislative history accompanying later amendments to the Federal Railroad
   Safety Act indicates Congress's intent to preserve the preemptive force of 49
   U.S.C.S. § 20109(c).  More Like This Headnote


**COUNSEL:** [*1] For Victor Sereda, Plaintiff: Charles A Collins, LABOR & PROFESSIONAL
CENTRE, ST PAUL, MN; Thomas J Duff, Duff Law Firm, PLC, Des Moines, IA

For Burlington Northern Santa Fe, Defendant: Mary E Funk, Thomas M Cunningham,
Nyemaster Goode Voigts West, Hansell & O'Brien, PC, Des Moines, IA

**JUDGES:** RONALD E. LONGSTAFF, Chief Judge

**OPINIONBY:** Ronald E. Longstaff

**OPINION:** RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this wrongful termination action, plaintiff Victor Sereda ("Sereda") claims that he was
discharged from his job as a track inspector for defendant Burlington Northern Santa Fe
Railroad Company ("BNSF") in violation of an alleged Iowa public policy prohibiting retaliation
against employees for reporting their employer's railroad safety violations. The complaint, n1
originally filed in the Iowa District Court for Polk County, was removed to this court by BNSF
based on diversity of citizenship. See 28 U.S.C. §§ 1332, 1441, and 1446. BNSF now moves
for summary judgment based on two alternative grounds. First, BNSF argues that Sereda's
state wrongful discharge claim is preempted by the whistleblower protection remedy of the
Federal Railroad Safety Act [*2] ("FRSA"), 49 U.S.C. § 20109(c). Second, BNSF contends
that even if the FRSA does not preempt state common law claims, Sereda cannot establish

that Iowa public policy protects whistleblowers from retaliation.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Sereda's complaint contained an additional claim alleging that he was discharged because of a disability in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216. That claim has since been dismissed with prejudice in accordance with the parties' stipulation. Fed. R. Civ. P. 41; (Clerk's # 33.)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Sereda resists BNSF's motion and moves the court to certify the preemption and public policy questions to the Iowa Supreme Court pursuant to Iowa Code Section 684A.1. See also LR 83.1 (providing procedure for certification of question of state law to highest appellate court of the state.) BNSF resists Sereda's motion for certification. Both motions are fully submitted and ready for ruling. For the reasons articulated **[*3]** below, the court will grant BNSF's motion for summary judgment. Sereda's motion for certification will therefore be dismissed as moot.

## BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to Sereda. Sereda began his career with BNSF in 1973, and since that time has worked in the Burlington, Iowa area as a trackman, foreman, and most recently as a track inspector. (Def.'s App. at 002-04.) Sereda's track inspector duties required him to inspect the railroad track and remedy defects, either by himself or with assistance from "section" workers -- a team devoted to track repairs in a particular geographic area. Id. at 004-06. Remedial actions include manual labor, such as raising joints and replacing angle bars, and the issuance of orders, such as an order to remove a track from service. Id. at 006.

Back surgery in the early 1990s left Sereda with a permanent lifting restriction of between 35 and 40 pounds. Id. at 010, 086; (Pl.'s Suppl. App. at 858.) Nevertheless, Sereda was working at full duty in January 2 001 when John Rotness became his roadmaster and direct supervisor. (Pl.'s Suppl. App. at 799, 806, 809-10, 829, 836-38, 858.) **[*4]** Rotness's supervisor was division engineer Rollie Roskilly, with whom he had previously worked from 1977 to 1987 in a different BNSF division. (Def.'s App. 052, 054.)

On Rotness's first day of work, Sereda informed him about defective conditions on a curve near the Amtrak depot in Burlington. Id. at 810; (First Am. Compl. P 26.) Rotness told Sereda that the problem would be corrected. (Pl.'s Suppl. App. at 811.) Sereda then told Rotness he had a lifting restriction, but received no response. Id.

Sereda continued to report track defects and hazardous conditions near the Burlington depot throughout 2001. Id. at 788, 834. The reports were passed on to Rotness and Roskilly, as well as to other BNSF superiors and the Federal Railroad Administration ("FRA"). Id. at 773-74, 788. In August of 2001, BNSF officials inspected the track near the Burlington Amtrak depot and determined that it needed to be fixed soon. Id. at 789-91. A few days later Roskilly expressed anger with Sereda over his reports, telling him "You nearly got my butt fired." Id. at 830-35. Sereda contends that Roskilly was angry because he and Rotness were criticized by the BNSF officials for not having **[*5]** fixed the Burlington track problem. (First Am. Compl. P 29.)

On September 12, 2001, Sereda asked Rotness to send a team to perform repairs on track near Biggsville, Illinois. (Def.'s App. at 091.) Rotness ordered Sereda to perform the repairs

himself and to use a hydraulic tamper for the job. (Pl.'s Suppl. App. at 837-38.) When Sereda informed Rotness that the weight of the tamper exceeded his lifting restriction, Rotness replied that he was unaware of the restriction and instructed Sereda to refrain from working until he received the relevant BNSF documentation. Id. at 816, 837. Although Sereda provided Rotness a copy of his lifting restrictions (Def.'s App. at 089-90) the very next day, Rotness had already spoken to Roskilly about the situation, and Sereda was immediately placed on medical leave. Id. at 091; (Pl.'s Suppl. App. at 818-21.) Despite the permanent nature of his lifting restrictions, BNSF continues to renew Sereda's leave of absence, effectively terminating his employment short of outright dismissal. (Pl.'s Suppl. App. at 712-14.)

## SUMMARY JUDGMENT STANDARD

HN1⊀Summary judgment is appropriate only when the record, viewed in the light most favorable to the nonmoving **[*6]** party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to set forth sufficient evidence to show there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If the moving party carries its burden under Rule 56(c), then the party resisting the motion must "go beyond the pleadings, and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324 (internal citation omitted). If the resisting party fails to do so, then the moving party is entitled to summary judgment. Id. at 322.

## DISCUSSION

HN2⊀The Supremacy Clause of the Constitution, U.S. Cont. art. VI, cl. 2, is the wellspring of preemption doctrine. Chapman v. Lab One. Inc., 390 F.3d 620, 624 (8th Cir. 2004). The doctrine mandates that "state law must give way when it conflicts with or frustrates **[*7]** federal law." Id. "Pre-emption is fundamentally a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." English v. General Electric Co., 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 110 S. Ct. 2270 (1990) (internal citation omitted).

HN3⊀The FRSA protects railroad employees who report safety concerns from discrimination and provides a mechanism for the resolution of claims of retaliation against employee whistleblowers. 49 U.S.C. § 20109(a), (c). Although the FRSA contains a general preemption provision, 49 U.S.C. § 20106, n2 Congress' intent to preempt state common law claims is best evidenced by the explicit terms of § 20109 (c), which mandates that "[a] dispute, grievance, or claim arising under this section is subject to resolution under section 3 of the Railway Labor Act (45 U.S.C. 153)." As the Fourth Circuit Court of Appeals concluded in Rayner v. Smirl, 873 F.2d 60, 65 (4th Cir. 1989), a decision which squarely addresses the question of FRSA preemption of a state common law claim for wrongful discharge, "this specific **[*8]** remedial scheme illustrates a congressional intent that the FRSA remedy for railroad 'whistleblowers' be exclusive."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 In CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 675, 123 L. Ed. 2d 387, 113 S. Ct. 1732 (1993), the Supreme Court held that 49 U.S.C. § 20106 (as then in effect) authorized the Secretary of Transportation to issue regulations preempting state common-law claims. Because the public policy underlying Sereda's wrongful discharge claim is substantially subsumed by the employee protections of § 20109, id. at 664, rather than by regulations

Case 5:03-cv-04110-DEO   Document 54-2   Filed 07/01/05   Page 5 of 24

promulgated by the Secretary, the court will focus its analysis on the specific preemptive effect of § 20109, rather than on the general preemptive effect of § 20106. See also Cearley v. Gen. Am. Transp. Corp., 186 F.3d 887, 890 (8th Cir. 1999) (finding FRSA preemption where regulations established by the Secretary under § 20106 subsumed the subject matter of plaintiff's state law tort claim).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Sereda attempts to undercut **[*9]** the validity of the Rayner decision in a number of ways, none of which the Court finds persuasive. These include: post-Rayner Supreme Court opinions such as English, which he contends implicitly overruled Rayner; federal and state decisions post-English which he contends refuse to follow Rayner; statutes with similar employee whistleblower protections held not to preempt state common law claims; legislative history allegedly indicating Congressional intent to avoid FRSA preemption; and the election of remedies provision of § 20109(d), which he asserts contradicts any suggestion of Congressional preemptive intent. Because the question of FRSA preemption of state law tort claims alleging whistleblower retaliation is apparently one of first impression in our circuit, see Thomas v. Union Pacific R.R. Co., 308 F.3d 891, 893-94 (8th Cir. 2002) (affirming grant of summary judgment in favor of employer on former employee's claim of whistleblower retaliation in violation of alleged Iowa public policy, but failing to reach the issue), the court will address Sereda's arguments in some detail.

FRSA preemption in light of English

In English, the **[*10]** Supreme Court addressed the "question of whether a state law tort claim is pre-empted by § 210 of the Energy Reorganization Act of 1974, 42 U.S.C. § 5851 (a)," Schweiss v. Chrysler Motors Corp., 922 F.2d 473, 474 (8th Cir. 1990), n3 a provision which, like 49 U.S.C. § 20109(a), prohibits employers from discriminating against employees who report safety violations. The Court, noting the absence in the statute of any explicit preemptive language, see English, 496 U.S. at 80 ("It is undisputed that Congress has not explicitly pre-empted petitioner's state-law tort action by inserting specific pre-emptive language into any of its enactments governing the nuclear industry"), held that "petitioner's claim for intentional infliction of emotional distress does not fall within the pre-empted field of nuclear safety . . . nor does it conflict with any particular aspect of § 210." Id. at 90. That conclusion was buttressed by the statute's lack of any "special features warranting pre emption," such as a specific suggestion in the text or legislative history revealing a clear congressional purpose **[*11]** to supplant state law causes of action. Id. at 88. The text and legislative history of § 20109, however, clearly indicate a congressional preemptive intent absent from the Energy Reorganization Act ("ERA") and similar statutes protecting whistleblowers in other fields.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Schweiss applied the principles of English to conclude that section 11(c) of the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. § 660(c), did not preempt plaintiff's state law claim for wrongful discharge. Schweiss, 922 F.2d at 475. The FRSA's employee protections differ markedly from the Energy Reorganization Act ("ERA") and the OSHA in both text and legislative history, however, as illustrated below.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Text and Legislative History of § 20109

As noted previously above, *HN4*any claim by a railroad employee which invokes the FRSA's whistleblower protections is subject to mandatory dispute resolution under § 20109 (c). See 49 U.S.C. § 20109 (c) **[\*12]** ("A dispute . . . arising under this section is subject to resolution under section 3 of the [RLA]"); see also Consol. Rail Corp. v. United Transp. Union, 947 F. Supp. 168, 171 (E.D. Pa. 1996) ("When Congress added the employee safety provisions in 1980, it intended that they were to be enforced 'solely through the existing grievance procedures provided for in Section 3 of the Railway Labor Act . . . .'" (quoting H.R. Rep. No. 96-1025, at 8 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3830, 3832)).*HN5* The mandatory phrasing of § 20109 stands in stark contrast to the permissive language employed in similar statutes with employee protection remedial provisions, such as the ERA, 42 U.S.C. § 5851(b)(1), the OSHA, 29 U.S.C. § 660(c)(2), and the Commercial Motor Vehicle Safety Act ("CMVSA"), 49 U.S.C. § 31105(b)(1). Under those statutes, an aggrieved employee "may" file a complaint with the Secretary of Labor if the employee believes there has been discrimination based on whistleblowing activities. Such permissive language implies that a covered employee remains free to pursue a claim under any available **[\*13]** remedy, whereas the FRSA's language directs a railroad employee who wishes to invoke the FRSA's whistleblower protections to utilize the specific remedy provided by § 20109(c).

*HN6*The conclusion that the FRSA preempts state common law remedies protecting railroad whistleblowers is not undermined by the statute's inclusion of an election of remedies provision. See 49 U.S.C. § 20109(d) ("An employee . . . may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the carrier"). The provision is addressed not to the character or motivation of the employer's allegedly unlawful act, but to the act itself. Accordingly, *HN7*§ 20109(d) allows an aggrieved railroad employee to pursue either a § 20109(c) proceeding alleging wrongful discharge for reporting an employer's safety violations or a claim alleging wrongful discharge for some other reason -- disability discrimination, for example -- protected under another provision, but not both, as both would be predicated on the same allegedly unlawful discharge. If, however, the railroad employee elects to proceed on the theory that the discriminatory act was in retaliation **[\*14]** for whistleblowing, the procedure of § 20109(c) must be utilized. See also Rayner, 873 F.2d at 66 n.1. (examining the legislative history and finding that § 441(d), the prior equivalent of § 20109(d), addressed only "federal statutes and regulations, not the common law remedies of the fifty states," and was "therefore not a general election of remedies provision.").

*HN8*The FRSA's legislative history unmistakably supports the conclusion that Congress intended § 20109(c) to serve as the exclusive means for enforcing whistleblower retaliation claims advanced by railroad employees. A report of the House Committee on Interstate and Foreign Commerce concerning the 1980 amendments to the FRSA that first granted whistleblower protection to railroad employees states, in pertinent part:

> The Committee has been informed of many complaints over the years of harassment in situations where a worker notifies authorities of violations, testifies in safety proceedings or institutes an action against a railroad. According to these complaints, harassment includes, but is not limited to, firing, verbal abuse, disproportionate dangerous assignments, and constant and unrelenting **[\*15]** supervision. Such retaliatory actions by employers are not to be tolerated in the work place. Section 10 of the bill provides protection for the rail worker under these circumstances. The legislation would forbid discrimination against an employee for, among other things, reporting such violations. . . .

> **The protections provided for in the paragraph above would be enforced solely-through the existing grievance procedures provided for in section 3 of the Railway Labor Act,** including the adjustment board, its divisions, and the 'public law boards'.

H.R. Rep. No. 96-1025, at 8 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3830, 3832 (emphasis added).

*HN9*The legislative history accompanying later amendments to the FRSA indicates Congress's intent to preserve the preemptive force of § 20109(c). In 1988, Congress amended the FRSA employee protections via the Rail Safety Improvement Act ("RSIA"). Rail Safety Improvement Act of 1988, Pub. L. No. 100-342, § 5, 102 Stat. 624 (1988). The amendment provided for the "expediting of any proceeding with respect to a dispute, grievance or claim for improper discharge or discrimination . . . which arises from an employee's filing of **[*16]** a complaint, institution of a proceeding, or testifying regarding the enforcement of the railroad safety laws." S. Rep. No. 100-153, at 12 (1988), *reprinted in* 1988 U.S.C.C.A.N. 695, 706. Once again, Congress stated its intent that "any such dispute shall be resolved by the Adjustment Board or any-other Board of Adjustment created under section 3 of the Railway Labor Act . . . ." Id.

On June 28, 1990, a little more than three weeks after the English ruling, the Senate Committee on Labor and Human Resources recommended passage of the Employee Health and Safety Whistleblower Protection Act. See S. Rep. No. 101-349, 1990 WL 258967 (accompanying S. 436). The Act would have provided a private right of action in federal court for employees in fields with no existing whistleblower protection legislation. Id. The Committee, relying on English, took the view that "existing federal whistleblower protection statutes do not supersede the rights and remedies available under state statutes and common law." Id. The minority opposing the bill, however, thought the proposed legislation "would engender a proliferation of duplicative state and federal lawsuits **[*17]** by failing to preempt state laws." It is uncertain whether the whole Congress agreed with the Senate Committee's sweeping view of the absence of preemptive force accorded federal whistleblower protection statutes, however, as the bill was never enacted. S. 436, 101st Cong., 1st Sess. (1989).

Congress later amended the FRSA in 1994 as part of a revision and codification of Title 49 of the United States Code, and declared "this bill makes no substantive change in the law." S. Rep. No. 103-265, at 5 (1994), 1994 WL 261999. The lack of any substantive changes in the 1994 amendment, or, for that matter, any clarification concerning the preemptive effect of § 20109(c) is notable, coming as it did after the decisions in Rayner and English. Congress was surely aware of the Fourth Circuit's decision, yet it evidently saw no need to amend the FRSA to address what Sereda contends was a mistaken statutory analysis, or to provide a measure of clarity in light of English, which he contends implicitly overruled Rayner. The lack of action is all the more curious when one considers that Congress found it necessary to insert a nonpreemption provision into 42 U.S.C. § 5851 **[*18]** despite the Supreme Court's refusal to grant § 5851 preemptive effect in English. See Energy Policy Act of 1992, Pub. L. No. 102-486, § 2902(e), 106 Stat. 2776 (1992); H.R. Conf. Rep. No. 102-108, at 364 (1992), 1992 U.S.C.C.A.N. 2472 (inserting subsection (h), entitled "Nonpreemption"). In any event, the FRSA's text and the legislative history accompanying its *enacted* amendments, both before and after English, demonstrate Congress's intent that § 20109(c) serve as a railroad employee's exclusive remedy against whistleblower discrimination.

Continued Judicial Reliance on Rayner

Sereda cites a number of post-English cases which he contends have refused to follow Rayner. including two District Court decisions out of the Fourth Circuit, Kelly v. Norfolk & S. Ry. Co., 80 F. Supp. 2d 587 (S.D.W.Va. 1999), and Bailey v. Norfolk & W. Ry. Co., 842 F. Supp. 218 (S.D.W.Va. 1994), an Illinois District Court decision, Mason v. Norfolk Southern Corp., 1997 WL 733901, 157 L.R.R.M. (BNA) 2511 (N.D. III. 1997), and a decision by a Florida Court of Appeals, Roland v. Florida E. Coast Ry., LLC, 873 So. 2d 1271 (Fla. 3d. DCA

2004). **[\*19]** He further cites Eighth Circuit decisions such as <u>Schweiss</u> and <u>Iowa. Chi. & E. R.R. v. Wash. County, 384 F.3d 557 (8th Cir. 2004)</u> as support for a finding of FRSA nonpreemption. Sereda's reading of these cases is well wide of the mark, as none even remotely cast doubt upon Rayner, while some expressly adopt its conclusion.

In Kelly, for instance, the court clearly recognized the continued vitality of Rayner. See <u>Kelly, 80 F. Supp. 2d at 590 n.3</u> ("If the Court finds that <u>§ 20109</u> does in fact provide Kelly a remedy, the Court has no doubt that Kelly's claims for intentional infliction of emotional distress would be preempted. See <u>Rayner, 873 F.2d at 64-66</u>."). <u>Roland,</u> upon which Sereda's brief in opposition to summary judgment places much reliance, was not only vacated, see <u>Florida E. Coast Ry., LLC v. Roland, 886 So. 2d 226 (Fla. 2004)</u> ("earlier decision vacated"), but states, "The Rayner court is correct that the election of remedies provision prohibits a railroad employee from electing a state common-law remedy, such as a state wrongful discharge claim." <u>Roland, 873 So. 2d at 1274 n.4.</u> **[\*20]** In short, the authorities Sereda presents are entirely unpersuasive on the issue of FRSA preemption of his state wrongful discharge claim.

## CONCLUSION

Sereda presents ample evidence in support of his claim, and his allegations, if true, are troubling. His remedy, however, is in a proceeding under <u>section 3 of the RLA</u>. Because the Court concludes that Congress intended <u>§ 20109 (c)</u> to serve as the exclusive means by which railroad employees could obtain relief from discrimination based on their reporting of employer safety violations, BNSF's motion for summary judgment is **GRANTED.** Sereda's motion for certification is **DISMISSED** as moot.

**Dated** this 17th day of March, 2005.

RONALD E. LONGSTAFF, Chief Judge

United States District Court

Service: **Get by LEXSEE®**
Citation: **2005 U.S. Dist. Lexis 5598**
    View: Full
Date/Time: Thursday, June 23, 2005 - 3:27 PM EDT

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◈ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🅘 - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
NIPPON YUSEN KAISHA d.b.a. NYK Line
v.
UNION PACIFIC RAILROAD COMPANY, et al.
No. CV048861GAF (RZX).

May 10, 2005.
Marilynn Morris, for Plaintiffs.

CIVIL MINUTES--GENERAL
GARY FEESS, J.

Proceedings: (In Chambers)

*1 Currently outstanding in this case are two Orders to Show Cause issued by the Court on January 12, 2005 and March 25, 2005. [FN1] The first addressed this Court's subject matter jurisdiction and the second the potential res judicata effect of the denial of Plaintiff's motion for leave to add Defendant to the suit in the related case CV 03-6523-GAF (RZx). Plaintiff having shown cause in the latter, the Court hereby VACATES the OSC of March 25, 2005. However, the Court finds that Plaintiff has failed to show cause why this case should not be dismissed for lack of subject matter jurisdiction, and thus the Court DISMISSES the suit.

> FN1. The Court also stayed consideration of the parties' stipulation to consolidate this case with case number CV-03-6523. Given that the Court is dismissing this action the request is now moot.

*I. BACKGROUND*

Plaintiff Nippon Yusen Kaisha d.b.a. NYK Line ("Plaintiff" or "NYK") brought this action on October 26, 2004, seeking indemnification and contribution arising out of the derailment of a train operated by Burlington Northern and Santa Fe Railway ("BNSF") on trackage owned by Defendant Union Pacific Railroad Company ("UPRR" or

"Defendant"). The derailment damaged five container loads of cargo requiring Plaintiff to pay, pursuant to a bill of lading issued by Plaintiff, $387,349.83 to the owners and shippers of the cargo. Plaintiff alleges that the derailment was caused "in whole or in part, [by] UPRR's failure to inspect, maintain, repair or operate the track in a reasonably safe manner or in compliance with federal law." (Compl.¶ 1).

Specifically, Plaintiff contends that UPRR violated the Federal Railway Safety Act ("FRSA"), 49 U.S.C. §§ 20100 *et seq.,* and the regulations promulgated thereunder at 49 C.F.R. §§ 200 *et seq.* Jurisdiction for this claim is pled under 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce and antitrust regulations). [FN2] Plaintiff's second cause of action is a supplemental state law negligence claim brought pursuant to 28 U.S.C. § 1367. The claim alleges that UPRR "negligently fail[ed] to inspect, maintain, repair, or operate its track in a reasonably safe manner and condition." (Compl.¶ 14).

> FN2. Section 1337 grants the district courts original jurisdiction over "any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." 28 U.S.C. § 1337.

*II. PLAINTIFF'S FEDERAL CLAIM FAILS BECAUSE FRSA DOES NOT CONTAIN AN EXPRESS OR IMPLIED PRIVATE RIGHT OF ACTION*

Both § 1331 and § 1337 grant federal jurisdiction for civil actions "arising under" federal laws. 28 U.S.C. §§ 1331, 1337. "[T]he 'arising under' language in section 1337 is interpreted in essentially the same way as the 'arising under' phrase in section 1331." *Hunter v. United Van Lines,* 746 F.2d 635, 639 (9th Cir.1984). "[A] suit arises under the law that creates the cause of action." *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Riley v. Alabama Great Southern Railroad Co.,* 2002 U.S. Dist. LEXIS 18645, *8 (E.D.La. Sept. 30, 2002) ("Because plaintiffs' do not have a cause of action ... under federal law, their claims do not arise under federal law.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.


Plaintiff's federal claim alleges that Defendant UPRR "negligently failed to inspect, maintain, repair and/or operate its track in accordance with federal law, including 49 U.S.C. §§ 20100, et seq. and regulations thereunder at 49 C.F.R. §§ 200, et seq." (Compl.¶ 12). However, the FRSA contains no express or implied cause of action authorizing suit by a private individual.

*A. Express Cause of Action*

**\*2** By its terms, the FRSA does not provide a general private right of action to either (1) enforce compliance with safety regulations [FN3] or (2) seek moneys based on loss caused by violations of those regulations. The stated purpose of the FRSA is to "promote safety in all areas of railroad operations," 49 U.S.C. § 20101, and not merely among the members of a discrete group such as workers or passengers. "The language of section [20101] is but a command to a federal agency, creating no rights in individuals." *DeBiasio v. Illinois Cent. R.R.*, 1992 U.S. Dist. LEXIS 15573, 8-9 (N.D.Ill. Oct. 8, 1992). The FRSA specifically vests enforcement of safety standards solely within the power of the Secretary of Transportation. 49 U.S.C. § 20111 ("The Secretary of Transportation has exclusive authority ... to impose and compromise a civil penalty for a violation of a railroad safety regulation prescribed or order issued by the Secretary"). Civil actions under the FRSA may be filed by the Attorney General, but again, only at the request of the Secretary of Transportation. 49 U.S.C. § 20112. Thus, no express private right of action exists.

> FN3. Civil actions may, however, be filed by *employees* of a railroad to compel the Secretary of Transportation to issue a safety regulation if the absence of such a regulation would expose the employee to imminent physical injury. 49 U.S.C. § 20104. Even if NYK were an employee, it still could not file a suit against UPRR directly, but could only seek to compel the Secretary to act.

*B. Implied Cause of Action*

Courts have also found that neither the FRSA nor its supporting regulations create an *implied* causes of action.

The Supreme Court has set out four factors to be considered: "(1) Is the plaintiff one of the class for whose especial benefit the statute was enacted; (2) is there any indication of legislative intent to create a private remedy; (3) is such a remedy consistent with the purposes of the underlying legislative scheme; and (4) is the cause of action traditionally one entrusted to state law?" *DeBiasio*, 1992 U.S. Dist. LEXIS 15573 at \*5-6 (citing *Court v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)). However, "[t]he question of whether a statute creates a private cause of action is primarily a question of legislative intent," and there exists a strong presumption against finding an implied cause of action. *DeBiasio*, 1992 U.S. Dist. LEXIS 15573 at \*5.

As stated above, the language of the FRSA is a general command to an agency and gives no indication that it was enacted for the express benefit of any one special group. *Id.* at \*8-9. As to the second and most important factor, it is clear that Congress did not intend to create a private right of action. "Rather than create a private cause of action, the FRSA creates an extensive regulatory scheme that places all authority over safety standards in the hands of the FRA and, in limited circumstances, certain state agencies." *Id.* at 9. Further, since the "legislative scheme" leaves enforcement to the FRA and the Attorney General, implying a private right of action would be inconsistent. *Abate v. Southern Pac. Transp. Co.*, 928 F.2d 167, 170 (5th Cir.1991). "In short, the structure of the FRSA no more supports inferring a private cause of action than does its language." *Id.* Finally, "where no private remedy under the statute is found, none may be implied under its implementing regulations." *DeBiasio*, 1992 U.S. Dist. LEXIS 15573 at \*10-11. Accordingly, Plaintiff's first cause of action, cannot be maintained under either the FRSA or its implementing regulations and is thus DISMISSED WITH PREJUDICE.

*III. PLAINTIFF'S STATE LAW CLAIM PROVIDES NO INDEPENDENT BASIS FOR JURISDICTION*

**\*3** Plaintiff's second cause of action provides no independent basis for jurisdiction and the Court will not retain it under supplemental jurisdiction. "[T]hough state law creates [Plaintiff's second] cause[ ] of action, its case might still 'arise under' the laws of the United States if a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." _Franchise Tax Bd. v. Constr. Laborers Vacation Trust,_ 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (emphasis added). Even where, as here, a federal regulation may constitute an element of the state law claim it must be "pivotal," or "substantial," as opposed to merely "incidental," and the resolution of the federal question must play a significant role in the proceedings. _Berg v. Leason,_ 32 F.3d 422, 424 (9th Cir.1994). However, the Supreme Court has found that "if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial' federal question." _Utley v. Varian Assocs., Inc.,_ 811 F.2d 1279, 1283 (9th Cir.1987) (citing _Merrell Dow Pharmaceuticals, Inc. v. Thompson,_ 478 U.S. 804, 814, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)).

Furthermore, this is not one of the rare cases, i.e., those implicating the Employee Retirement Security Act ("ERISA") or § 301 of the Labor Management Relations Act ("LMRA"), where federal law completely preempts Plaintiff's common law negligence claim so as to create a federal question by transforming it into a federal cause of action. Even where a federal law or regulation may provide a preemption defense to a state law cause of action, such a defense does not give the federal court jurisdiction over the claim. _Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang,_ 376 F.3d 831, 839 (9th Cir.2004). Only in rare cases where the preemptive force of a federal statute is so powerful that it displaces all state causes of action is jurisdiction provided. _Id._

Thus, even if a Defendant has available as a defense to the negligence claim the fact that it complied with federal regulations in this area, _see e.g., Fed. Ins. Co. v. Burlington N. & Santa Fe Ry. Co.,_ 270 F.Supp.2d 1183, 1187- 1188 (C.D.Cal.2003), no federal jurisdiction exists unless there is complete preemption. As the Eighth Circuit noted, unlike LMRA or ERISA, which include a specific jurisdictional provision stating that the district courts have jurisdiction to grant relief, the FRSA does not provide such a private right of action. _Chapman v. LabOne, Inc.,_ 390 F.3d 620, 629 (8th Cir.2004). "[T]he absence of an alternative cause of action

militates against a finding of complete preemption." _Id._ (citing _Franchise Tax Bd. v. Constr. Laborers Vacation Trust,_ 463 U.S. 1, 26, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Finding no independent basis for jurisdiction over this remaining claim, the Court DISMISSES this cause of action WITHOUT PREJUDICE. [FN4]

> FN4. While Plaintiff may have an independent basis for jurisdiction under 28 U.S.C. § 1332, it has failed to plead it in the complaint or to assert the necessary elements in response to the Court's OSC.

*4 IT IS SO ORDERED.

2005 WL 1241866 (C.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 2:04CV08861 (Docket) (Oct. 26, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**H**

Motions, Pleadings and Filings

United States District Court, N.D. California.
Larry LAW, et al., Plaintiffs,
v.
GENERAL MOTORS CORPORATION, et al., Defendants.
**C 94-3585 SBA.**

June 15, 1995.

Paul F. Bennett, Gold, Bennett & Cera, Jeffrey B. Harrison, Harrison & DeGarmo, San Francisco, CA, for plaintiffs.

David M. Heilbron, McGutchen, Doyle, Brown & Enersen, San Francisco, CA, J. Andrew Langan, Kirkland & Ellis, Chicago, IL, Carol H. Lesnek-Cooper, Detroit, MI, for defendant General Motors Corporation.

W. Bruce Wold, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, David B. Potter, Oppenheimer, Wolff & Donnelly, Saint Paul, MN, for defendant General Electric Company.

ORDER GRANTING MOTION TO DISMISS
ARMSTRONG, District Judge.

*1 Presently before the Court is the motion to dismiss of defendant General Motors Corporation, in which defendant General Electric Company has joined. Defendants General Motors Corporation and General Electric Company ("defendants") seek dismissal of plaintiffs' complaint on the ground that each of the state-law causes of action pleaded in the complaint is preempted by federal law. Also before the Court is plaintiffs' request for leave to amend, should the Court find dismissal is warranted on preemption grounds. Having considered all papers submitted in connection with this matter, including the parties' supplemental briefs, and being fully informed, the Court hereby GRANTS defendants' motion to dismiss, DENIES plaintiffs' request for leave to amend, and DISMISSES the complaint WITH PREJUDICE. [FN1]

*BACKGROUND*
This is a diversity jurisdiction case. Plaintiffs, eight railroad employees, have brought state-law causes of action against

defendants, the manufacturers of the locomotives aboard which plaintiffs worked. Plaintiffs allege that certain locomotive parts, including the locomotive engine, cab and brakes, manufactured by defendants were defective, causing plaintiffs to suffer extreme hearing loss. Plaintiffs allege that the locomotive parts created excessive noises and that the noises resulted from inadequate sound insulation, improper placement of horns and whistles, and generally defective design and manufacture of the locomotive parts. Plaintiffs assert that they are bringing a class action "on behalf of all persons who worked aboard locomotive engines designed and manufactured by defendants ... from 1952 to the present ... and who as a result of such work have suffered noise-induced hearing loss." (Complaint ¶ 7 at 3.) As yet, no class action has been certified, and therefore, as of the date of this order, the eight plaintiffs here are pursuing individual claims.

Plaintiffs seek to impose liability on defendants for their failure to properly remedy the defective locomotive parts and for their failure to appropriately warn the railroads and the railroad workers about the dangers of excessive noise. To do so, plaintiffs assert certain state common-law causes of action, including strict liability, negligence, failure to warn, breach of implied warranty, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Defendants move to dismiss plaintiffs' state-law claims on the ground that they are preempted by federal regulations regarding locomotive safety equipment. [FN2] Specifically, defendants maintain that plaintiffs' state-law claims are preempted by the Boiler Inspection Act ("BIA"), 49 U.S.C. §§ 20701-20903, and the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101-20146. [FN3] The BIA grants the Secretary of Transportation (the "Secretary") the power to prescribe and regulate "all parts and appurtenances" of locomotives. 49 U.S.C. § 20701; *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149, 1152 (9th Cir.1983). One purpose of the BIA is to provide safe working environments for railroad employees. *See Napier v. Atlantic Coast Line,* 272 U.S. 605, 608 (1926). The FRSA confers upon the Secretary authority to prescribe regulations for "every area of railroad safety supplementing laws and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                 Page 2
1995 WL 542496 (N.D.Cal.), Prod.Liab.Rep. (CCH) P 14,252
(Cite as: 1995 WL 542496 (N.D.Cal.))

regulations in effect on October 16, 1970." 49 U.S.C. § 20103; Marshall, 720 F.2d at 1153. The purpose of the FRSA "is to promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents." 49 U.S.C. § 20101.

*2 In their moving and reply papers, defendants argue that Congress intended the BIA to occupy the field of regulations of locomotive equipment, and therefore plaintiffs cannot assert state causes of action that would impose liability on defendants for their failure to install particular locomotive safety equipment. Defendants then contend that, even if the BIA does not preempt plaintiffs' claims, the FRSA does because (1) the FRSA preempts any state law covering the same subject matter of the federal regulations proscribed under the FRSA, and (2) federal regulations proscribed under the FRSA cover the subject matter of locomotive noises. Defendants maintain that the FRSA's specification that states may adopt more stringent laws related to railroad safety does not apply here because (1) locomotive noise control does not involve a local safety concern, and (2) allowing the imposition of liability under state law would result in an impermissible burden on interstate commerce.

Plaintiffs oppose preemption. They maintain that their state causes of action do not fall within the scope of preemption under the BIA or the FRSA because these acts involve regulations imposed on railroads, not manufacturers, and therefore any cause of action against locomotive manufacturers is not preempted. In support of their position, plaintiffs argue that Congress expressed no intent to deprive railroad workers of state remedies against manufacturers of defective locomotive equipment. As to the BIA, plaintiffs assert that their claims do not fall within the scope of preemption because (1) they do not seek to impose liability based on defendants' failure to equip their locomotives, but based on their failure to take precautions that would provide a safe working environment for locomotive workers; and (2) defendants failed to satisfy an ordinary duty of care to plaintiffs, a duty that exists in addition to the duties under the BIA. Plaintiffs also argue that no preemption occurs under BIA because the BIA only preempts state regulation, and their causes of action "have nothing to do with state

regulation." (Pls.'s Oppo. at 13.) In making this arguments, plaintiffs characterize Napier, the first Supreme Court case to discuss preemption under the BIA, as a conflict preemption case, not as a field preemption case. As to the FRSA, plaintiffs contend that the regulations dealing with locomotive noises do not result in preemption here because those regulations were not adopted until 1980, which is 28 years after the class period began.

Because the parties' papers did not address several key issues, the Court ordered further briefing. The parties' further briefs clarify several facts. In their supplemental briefs, plaintiffs specify that they are seeking to impose duties on defendants that are different than those imposed under both the BIA and the FRSA. (Pls.'s Supp.Memo. at 1-2, 4-14; Pls.'s Supp. Memo at 1-2 ("Plaintiffs' state law causes of action seek to uphold rights against defendants that are different from the rights created by the provisions of the BIA or FRSA."); Pls.'s Supp. Memo at 14 ("As with all of plaintiffs' other causes of action, [with plaintiffs' emotional distress claims], there is no overlap between the legal duties imposed upon manufacturers by these causes of action and the legal duties imposed on railroads under the BIA and FRSA."); Pls.'s Supp. Memo in Response to Defs.'s Supp. Memo at 5 ("Accordingly, plaintiffs' claims seek to impose duties upon defendants that are very different than those imposed by the BIA and FRSA.").) Plaintiffs then argue that, should the Court find they cannot impose different duties, then the Court should grant them leave to amend to assert either state causes of action imposing the same duties as required under the BIA and FRSA or a federal cause of action for violations of the BIA and FRSA. Plaintiffs contend that, should the Court not grant leave to amend, manufacturers of defective locomotives will completely escape liability for injuries caused by the defects, a result not intended by Congress. Defendants counter by arguing that plaintiffs' causes of action are preempted whether they seek to impose the same or different duties, that no private right of action exists under the BIA or FRSA, and that they will not escape responsibility for manufacturing defective locomotives because (1) the Secretary may impose penalties of up to $20,000.00 a day for their failure to comply with the BIA or FRSA, and (2) practical business/financial constraints

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would prevent them from manufacturing defective locomotives in that no railroad would buy the locomotives if they are defective. Defendants charge that finding preemption is consistent with Congress' intent to create nationwide uniform regulations regarding locomotive equipment and safety.

*3 In essence, the parties' arguments can be condensed into the following issues: (1) whether dismissal is necessary on the ground that plaintiffs' state causes of action seeking to impose different duties than those imposed under federal law are preempted; and (2) if dismissal is necessary, whether plaintiffs should be given leave to amend to allege either (a) state causes of action seeking to impose the same duties as those imposed under federal law, or (b) federal causes of action for violations of the duties imposed by federal law. The Court finds that dismissal is necessary, as plaintiffs' current state claims seeking to impose different duties than those imposed under federal law are preempted. Moreover, the Court finds that plaintiffs' should not be given leave to amend, as state claims seeking to impose the same duties as those imposed under federal law are also preempted and as no federal private right of action exists to challenge violations of the federal law at issue here. Consequently, the Court GRANTS defendants' motion and DENIES plaintiffs' request for leave to amend. Plaintiffs' complaint is therefore DISMISSED WITH PREJUDICE.

### DISCUSSION

Preemption under the BIA is dispositive of the issues raised by the parties, and therefore the Court does not reach the parties' FRSA preemption arguments. [FN4] Below, the Court first discusses whether preemption under the BIA requires dismissal of plaintiffs' current causes of action. The Court then discusses whether leave to amend is appropriate in light of the preemption principles applicable to the BIA and the state of the law regarding the existence of a federal private right of action under the BIA.

*A. DISMISSAL*

1. *General Standard of Review*

Although defendants do not specify the Federal Rule of Civil Procedure upon which they rely to bring this motion to

dismiss, the Court assumes defendants are relying upon Rule 12(b)(6). *See, e.g., Kearns v. Tempe Technical Inst., Inc.,* 39 F.3d 222, 224 (9th Cir.1994) (applying Rule 12(b)(6) to motion to dismiss on preemption grounds). For purposes of a motion to dismiss under Rule 12(b)(6), a complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). A motion to dismiss should not be granted unless it appears beyond a doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Under Rule 12(b)(6), the court is generally confined to consideration of the allegations in the pleadings when assessing the merits of the motion.

2. *BIA Preemption Principles*

The preemption doctrine is based on the Supremacy Clause of Article VI of the Constitution, which provides that the laws of the United States shall be the supreme law of the land. U.S. Const. art. VI, § 2. The Supremacy Clause invalidates state laws that "interfere with, or are contrary to" federal law. *Hillsborough County, Fla. v. Automated Medical Labs., Inc.,* 471 U.S. 707, 712 (1985) (citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 211 (1824)). Preemption turns on the intent of Congress. *Marshall,* 720 F.2d at 1151. Consequently, the Supreme Court has identified three circumstances in which state law is preempted by federal law: (1) where Congress explicitly defines the extent to which its enactments preempt state law ("express preemption"); (2) where state law regulates conduct in a field that Congress intended the federal government to exclusively occupy ("field preemption"); and (3) where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ("conflict preemption"). *Southern Pacific Transp. Co. v. Public Util. Comm'n of Or.,* 9 F.3d 807, 810 (9th Cir.1993). The burden of proving preemption is on defendants. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 255 (1984); *Arkansas-Platte & Gulf v. Van Waters & Rogers,* 959 F.2d 158, 161 (10th Cir.1992).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*4 Scant authority discussing preemption of state common-law causes of action by the BIA exists. What authority does exist, however, clearly indicates that field preemption applies to the BIA. In *Marshall v. Burlington Northern, Inc.,* the Ninth Circuit stated: "Federal regulation of locomotive equipment under the Boiler Inspection Act has been held a total occupation of the field, preventive of any state or local regulations on the same subject." 720 F.2d 1149, 1152 (9th Cir.1983).

In *Marshall,* when discussing the scope of preemption under the BIA, the Ninth Circuit held that, as the BIA grants the Secretary the power to regulate "all parts and appurtenances" of locomotives, the scope of preemption is determined by the interpretation of "parts and appurtenances." The phrase "parts and appurtenances" encompasses " '[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary].' " 720 F.2d at 1152 (quoting *Southern Railway Co. v. Lunsford,* 287 U.S. 398, 402 (1933)).

Based on this definition of the BIA's scope, the Ninth Circuit held "that under the Boiler Inspection Act the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority delegated to the [Secretary]' to prescribe the same part or attachment." 720 F.2d at 1152. Applying this holding to the case before it, the *Marshall* court found preemption under the BIA precluded state-law causes of action seeking to impose liability for the defendant-railroad's failure to install strobe or oscillating lights on its locomotives: "It is within the scope of the Secretary's authority to prescribe strobe or oscillating lights for locomotives, and any state regulation is therefore preempted." *Id.* The Ninth Circuit further stated that, when the defendant-railroad complied with its obligations under the BIA and FRSA, it "complied as a matter of law with its duty to provide locomotive warning devices." *Id.* at 1153.

Implicit in *Marshall's* statement that the BIA preempts "any state or local regulation" within the BIA's scope and its holding that the state common-law damages claims before it were preempted because they fell within the BIA's scope is the notion that state regulation may be exerted through state

common-law causes of action, not simply state statutory regulation. This notion has been acknowledged in numerous cases. For example, in *San Diego Bldg. Trades Council v. Garmon,* the Supreme Court stated:

Our concern is with delimiting areas of conduct which must be free from state regulation if national policy is to be left unhampered. Such regulation can be as effectively exerted through an award of damages as through some form of preventive relief.... It may be that an award of damages in a particular situation will not, in fact, conflict with the active assertion of federal authority. The same may be true of the incidence of a particular state injunction. To sanction either involves a conflict with federal policy in that it involves allowing two law-making sources to govern. In fact, since remedies form an ingredient of any integrated scheme of regulation, to allow the state to grant a remedy here ... only accentuates the danger of conflict.

*5 359 U.S. 236, 246-47 (1959) (citations omitted). Hence, state statutory regulations and state common-law causes of action are preempted if they fall within the scope of the BIA. [FN5]

3. *The Merits*

The Court finds that the claims asserted by plaintiffs fall within the scope of preemption under the BIA. Locomotive engines, cabs and brakes are essential parts of a completed locomotive, and therefore constitute "parts and appurtenances" as defined by *Lunsford* and *Marshall.* The Court notes that, while plaintiffs argue against preemption, they never assert that the locomotive parts at issue here are not essential to a completed locomotive.

As plaintiffs' current state claims seeking to impose different duties [FN6] with regard to locomotive engines, cabs and brakes than imposed under the BIA are within the scope of preemption under the BIA, the Court finds that these claims are preempted. The Ninth Circuit's decision in *Marshall* supports this Court's holding. Particularly supporting this Court's holding is the *Marshall* court's statement that the railroad-defendant there complied with its duty regarding the locomotive parts at issue when it complied with the BIA and FRSA, thereby requiring a finding of preemption of state claims seeking to impose

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1995 WL 542496 (N.D.Cal.), Prod.Liab.Rep. (CCH) P 14,252
(Cite as: 1995 WL 542496 (N.D.Cal.))

different obligations. 720 F.2d at 1153.

Also supporting this Court's holding is *Springston v. Consolidated Rail Corp.*, 863 F.Supp. 535 (N.D.Ohio 1994). *Springston* relied on *Marshall* when it held that the plaintiffs' negligence and products liability actions against the railroad and the locomotive manufacturer were preempted. In *Springston,* the plaintiffs were attempting to impose liability on the railroad, like *Marshall,* and locomotive manufacturer, [FN7] unlike *Marshall,* for failing to install warning devices on the locomotive that were not required under the BIA. *Springston* relied heavily on *Marshall* when holding: "Plaintiffs cannot, therefore, impose on defendants any common law duty to install different equipment on [the] locomotives, and summary judgment is warranted." 863 F.Supp. at 539. The *Springston* court also stated: "[T]o allow plaintiffs state tort claims to stand would result in requirements of reflective material, oscillating, strobe and/or ditch lights of locomotives. Such lights are additional requirements on locomotives, even if they are aimed at a different evil than are headlights." *Id.* at 541. Based on the *Springston* plaintiffs' attempt to impose different duties than those required under the BIA, the *Springston* court found the claims before it were preempted by the BIA.

Plaintiffs' admission that they seek to impose standards regarding locomotive equipment that are different from those under the BIA cause the instant action to fall squarely within the holding of *Marshall* and *Springston.* As in *Marshall* and *Springston,* plaintiffs' current state causes of action are preempted, and therefore the Court GRANTS defendants' motion to dismiss.

*6 Before addressing the issue of whether it will grant leave to amend, the Court addresses two arguments raised by plaintiffs. First, plaintiffs assert no preemption occurs because their causes of action do not base recovery on failure to install certain locomotive equipment, but failure to take precautions against hearing loss. This assertion is without merit. Any alleged failure to take precautions is based upon defendants' alleged defective manufacturer of the locomotive equipment, or, in other words, their failure to install particular equipment or properly constructed particular equipment. Moreover, the complaint itself

maintains that liability exists for defendants' failure to install proper sound insulation and failure to properly install horns and whistles.

Second, plaintiffs claim they seek to impose liability on defendants for defendants' failure to satisfy an ordinary duty of care to plaintiffs, which exists in addition to the duties under the BIA. In making this argument, plaintiffs rely on the following statement in *Marshall:*

> The [*Lunsford* ] Court did not, however, establish "experimental devices" as a general category of locomotive equipment subject to state regulation. Rather, the Court held that railroads have an ordinary duty of care to maintain properly all devices actually attached to a locomotive. This duty is in addition to the absolute liability established by the Boiler Inspection Act for failure to maintain "parts and appurtenances."

720 F.2d at 1153. Contrary to plaintiffs' arguments, *Marshall* does not establish an ordinary duty of care in general. Instead, it establishes an ordinary duty of care to properly maintain devices actually installed on the locomotives, whether or not the devices are "parts and appurtenances" under the BIA. Plaintiffs do not allege that particular devices attached to the locomotive were negligently maintained resulting in their injury. Thus, plaintiffs' complaint is not within the *Marshall/Lunsford* ordinary duty of care claim. Furthermore, even if plaintiffs had averred the proper allegations to fall within such a claim, this particular claim could only be asserted against the railroad, as the railroad, not the manufacturer, has the duty to maintain the locomotive equipment--i.e., the railroad, not the manufacturer, has the duty to keep the locomotive equipment in working order. *See, e.g., Yamaha Motor Corp. v. Paseman,* 219 Cal.App.3d 958, 968 (1990) (discussing two separate duties with regard to defective products--one owed by the manufacturer to provide a product free of defects; the other owed by the purchaser to properly maintain the product).

## *B. LEAVE TO AMEND*

### 1. *General Standard of Review*

The Federal Rules of Civil Procedure provide that leave to amend a complaint should be "freely given when justice so

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                      Page 6
1995 WL 542496 (N.D.Cal.), Prod.Liab.Rep. (CCH) P 14,252
(Cite as: 1995 WL 542496 (N.D.Cal.))

requires." Fed.R.Civ.P. 15(a). The decision to grant or deny a request for leave to amend is a matter of the district court's discretion. *International Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir.1985).* In exercising its discretion, however, the Ninth Circuit requires that district courts grant leave to amend with "extreme liberality." *Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990).*

*7 The party opposing a motion for leave to amend bears the burden to convincingly demonstrate that a "substantial reason exists to deny leave to amend." *Shipner v. Eastern Air Lines, 868 F.2d 401, 407 (11th Cir.1989).* Thus, in assessing whether to grant leave to amend, the Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and *futility of the proposed amendment.*" *Moore v. Kayport Package Express, 885 F.2d 531, 538 (9th Cir.1989)* (emphasis added).

2. *The Merits*

The Court now addresses whether leave to amend should be granted for plaintiffs to allege either state causes of action seeking to impose the same duties as those required under the BIA or federal causes of action for violations of the BIA. As to both state and federal causes of action, the Court finds, for the reasons stated below, that allowing amendment would be futile, and therefore DENIES plaintiffs' request for leave to amend.

a. *State Causes of Action*

With field preemption, the general rule is that *all* state law is preempted, whether or *not* it interferes or conflicts with federal law. "Under the traditional preemption doctrine, if federal law is said to occupy an entire field of regulation ..., it will preempt any state law in that field, whether or not the particular state law impairs the federal law's operation." Richard E. Levy, *Federal Preemption, Removal Jurisdiction, and the Well-Pleaded Complaint Rule, 51 U.Chi.L.Rev. 634, 664-65 (1984)* [hereinafter "51 U.Chi.L.Rev. at ----"]; *see also Lea v. Republic Airlines, Inc., 903 F.2d 624, 633 (9th Cir.1990)* (quoting Eighth

Circuit case for proposition that " 'once Congress has expressed its intention to occupy the field, the state law is preempted, regardless of whether or not a conflict exists which involves a direct interference by the state law with the substantive federal legislation' ") (quoting *Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1215-16 (8th Cir.1981)).* Thus, with field preemption generally, all state law in the field is displaced or supplanted whether or not it impairs federal law. 51 U.Chi.L.Rev. at 665; *see also Sayles Hydro Assoc. v. Maughan, 985 F.2d 451, 455 (9th Cir.1993)* (stating that, with field preemption, "the federal role is so pervasive that no room is left for the states to supplement it").

Nothing presented by the parties indicates that the general rule of preemption of all state law, whether or not the state law conflicts with federal law, should not be applied to the instant action. Further, application of the general rule to the instant action is supported by *Marshall's* holding that, under the BIA, the state may not impose liability for failure to install a part or attachment of a locomotive if the part or attachment is within the scope of the BIA. 720 F.2d at 1152. *Marshall's* preemption holding is not dependent upon a determination of whether the state liability results from different duties than those under the BIA or the same duties as those under the BIA. Thus, under the general rule, all state claims that plaintiffs wish to assert in connection with any alleged defective design of locomotive engines, cabs and brakes are preempted, whether or not those state claims seek to impose the same or different duties, for the reason that such state claims fall within the scope of BIA's field preemption.

*8 Given the above, the Court finds that it would be futile to allow plaintiffs to amend to allege state claims that seek to impose the same duties as those imposed under the BIA. Thus, the Court DENIES plaintiffs' request for leave to amend to allege these state claims.

b. *Federal Causes of Action*

Plaintiffs contend that, in addition to violating state standards, defendants have violated the standards applicable under the BIA. Thus, in the event the Court finds preemption, plaintiffs seek permission to pursue federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Westlaw.



BIA, plaintiffs cannot assert federal claims for violations of the BIA against defendants. Thus, as allowing amendment would be futile, the Court DENIES plaintiffs' request for leave to amend to allege a federal claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss and DENIES plaintiffs' request for leave to amend. Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

> FN1. Pursuant to Local Rule 220-1, the Court adjudicates the instant motion without oral argument.

> FN2. Defendants alternatively seek summary judgment, arguing that they have complied with all federal regulations regarding noise levels of locomotive parts. Defendants submit declaration testimony in support of this assertion. Plaintiffs move to strike this evidence. The central issue raised by defendants is whether plaintiffs are entitled to proceed with their complaint in light of the preemption doctrine. Because this issue does not turn on whether defendants can prove that they are not liable, the Court finds defendants' evidence in support of compliance to be irrelevant, and therefore GRANTS plaintiffs' motion to strike. Moreover, resolution of the liability issue is inappropriate at this stage, as no discovery has been conducted in the action. Given this, even if the Court were inclined to consider defendants' evidence, the Court would have to grant plaintiffs' motion for a continuance under Rule 56(f) of the Federal Rules of Civil Procedure.

> FN3. In 1911, Congress enacted the first version of the BIA. See BIA, ch. 103, 36 Stat. 913 (1911) (current version at 49 U.S.C. §§ 20702-20903 (1994)). In 1970, Congress enacted the first version of the FRSA. See FRSA, Pub.L. No. 91-458, 84 Stat. 971 (1970) (current version at 49 U.S.C. §§ 20101-20146 (1994)). Both of these Acts have

been amended several times. The most recent amendment in 1994 also recodified the Acts into 49 U.S.C. See BIA, 49 U.S.C. §§ 20702-20903 (1994); FRSA, 49 U.S.C. §§ 20101-20146 (1994). Prior to the recodification into 49 U.S.C., the Acts could be found in 45 U.S.C. See BIA, 45 U.S.C. §§ 22 et seq. (1986); FRSA, 45 U.S.C. §§ 421 et. seq. Congress' 1994 recodification of the Acts was part of its recodification of all "laws related to transportation in one comprehensive title." H.R.Rep. No. 108, 103d Cong., 2d Sess. 3 (1994), reprinted in 1994 U.S.C.C.A.N. 818, 820. While the 1994 recodification resulted in certain minor modifications in the language of the various Acts, the modifications did not result in substantive changes to the law, as the language modifications were done merely for the purpose of promoting clarity and consistency. Id. ("In making changes in the language, precautions [were] taken against making substantive changes in the law.") Thus, cases interpreting the prior versions of the two Acts are applicable to the current versions of the Acts.

> FN4. The preemptive effect of the FRSA is different from that of the BIA. The FRSA permits the state to regulate an area until the Secretary actually adopts regulations on a particular subject matter. 49 U.S.C. § 20106; Marshall, 720 F.2d at 1153. Even when the Secretary adopts regulations, states are permitted to adopt stricter standards in certain situations. 49 U.S.C. § 20106. Recognizing that the preemptive effect of the FRSA, which was adopted after the BIA, is different from that of the BIA, the Ninth Circuit concluded that the language and structure of the FRSA "indicate a congressional intent to leave the [BIA] intact, including its preemptive effect." Marshall, 720 F.2d at 1153. As the preemptive effect of the BIA remains unchanged by the FRSA, the Court's ruling with regard to the BIA is dispositive. Thus, the Court need not, and does not, reach the parties' FRSA preemption arguments.

> FN5. Based on these principles, the Court rejects

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



plaintiffs' arguments that preemption does not apply because their state causes of action "have nothing to do with state regulation." (Pls.'s Oppo. at 13.)

FN6. Plaintiffs concede that their current claims seek to impose different duties. (*See, e.g.,* Pls.'s Supp. Memo in Response to Defs.'s Supp. Memo at 5 ("Accordingly, plaintiffs, claims seek to impose duties upon defendants that are very different than those imposed by the BIA and FRSA.").)

FN7. Plaintiff's protest that the BIA applies to the operation, not manufacture, of locomotive parts and appurtenance is fatuous. The rules that regulate locomotive parts and appurtenances necessarily apply to the manufacture of them; after all, one cannot operate an unmanufactured part or appurtenance. Also, the same Congressional interest in requiring uniform standards for railroads applies to the standards for locomotive manufacturers. *See Napier, 272 U.S. 605.* If it were otherwise, railroads would have to acquire non-uniform parts and appurtenances manufactured according to non-uniform standards, and so would be paralyzed just as much as if the carriers were directly subjected to non-uniform standards. Finally, *Springston's* consideration of whether the BIA preempts state-law causes of action against a locomotive manufacturer reveals that, contrary to plaintiff's assertions, the BIA preemption doctrine does apply to manufacturers, not just railroads. Thus, the Court rejects plaintiffs' assertion that BIA preemption does not apply to locomotive manufacturers.

1995 WL 542496 (N.D.Cal.), Prod.Liab.Rep. (CCH) P 14,252

**Motions, Pleadings and Filings (Back to top)**

• 4:94CV03585 (Docket) (Oct. 11, 1994)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                            Page 1
1992 WL 297396 (N.D.Ill.)
(Cite as: 1992 WL 297396 (N.D.Ill.))

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern Division.
Steve DEBIASIO, Plaintiff,
v.
ILLINOIS CENTRAL RAILROAD, a foreign corporation,
Defendant.
**No. 92 C 2281.**

Oct. 8, 1992.

MEMORANDUM OPINION AND ORDER
PLUNKETT, District Judge.

*1 Plaintiff Steve Debiasio has filed a three-count Complaint against Illinois Central Railroad, seeking damages for personal injuries suffered while Debiasio was an employee of the Defendant. Count III alleges a private cause of action for damages under the Federal Railroad Safety Act ("FRSA"). This matter is before this Court on Illinois Central's Motion to Strike Count III of Debiasio's Complaint on the grounds that the FRSA does not give rise to private right of action. (Mot. to Strike at 2.) For the reasons set forth below, Illinois Central's Motion is granted.

*Facts* [FN1]

Steve Debiasio was an employed as a switchman by Illinois Central at it's Glenn Yard facility in Cook County. (Compl. ¶¶ 3, 4.) On February 6, 1992, while Debiasio was working, one railroad car failed to automatically couple with another, and Debiasio attempted to open a "knuckle" on the recalcitrant car by hand. (Compl. ¶¶ 5, 7.) During the course of this procedure, Debiasio was injured. (Compl. ¶ 8.) Debiasio has filed a three-count Complaint against Illinois Central. Counts I and II sound under the Federal Employers Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"), and the Safety Appliance Act, 45 U.S.C. § 1-21. Count III, at issue here, asserts a private cause of action under the FRSA and the regulations promulgated thereunder. 45 U.S.C. § 431(a); 49 C.F.R. 215.123(d)(2).

*Discussion*

As an initial matter, the procedural posture of Illinois Central's Motion is in need of adjustment. While the essential remedy sought by Illinois Central is the dismissal of Debiasio's FRSA Count, *see* Fed.R.Civ.Proc. 12(b)(6), the Motion has in fact been filed as a Motion to Strike. *See* Fed.R.Civ.P. 12(f). A Motion to Strike is the appropriate remedy for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading, and the primary procedure for objecting to an insufficient defense. Wright & Miller, *Federal Practice and Procedure* § 1380. A Motion to Strike, however, is an inappropriate means of seeking dismissal of part of the Complaint. *Pierson v. Dean, Witter, Reynolds, Inc.,* 551 F.Supp. 497, 502 (C.D.Ill.1982) (citing Wright & Miller § 1380). Thus, as Illinois Central's Motion attacks the legal sufficiency of Count III, it shall be treated as a Motion to Dismiss under 12(b)(6).

On a motion to dismiss, the court views the allegations of the complaint as true, along with reasonable inferences therefrom, and views these in the light most favorable to the plaintiff. *Powe,* 664 F.2d at 642. Plaintiff's complaint should not be dismissed "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047 (1986) (citations omitted).

*2 Illinois Central attacks Count III on the grounds that no private right of action, express or implied, is created by the FRSA. It cites as authority *Abate v. Southern Pacific Transp. Co.,* 928 F.2d 167 (5th Cir.1991). Debiasio responds on two fronts: (1) that because a violation of the regulations under the FRSA constitutes negligence *per se,* Count III should stand; and (2) that an implied private cause of action is created by the FRSA. Debiasio's first contention is irrelevant to the Motion at issue. Whether or not violation of the regulations under the FRSA constitutes negligence per se is an evidentiary concern. It has nothing to do with the legal issue of whether Debiasio may maintain a private cause of action for breach of those regulations. If the regulations do indeed provide an applicable standard of care, as Debiasio suggests, then the proper place to allege

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 4**



Not Reported in F.Supp.                                      Page 2
1992 WL 297396 (N.D.Ill.)
(Cite as: 1992 WL 297396 (N.D.Ill.))

breach of that standard is under paragraphs 11 and 12 of Count I, where he alleges negligent acts in violation of FELA, not as an independent count.

Section 421(a)(1) of the FRSA, provides the Secretary of Transportation ("Secretary") the authority to promulgate the regulations at issue in the present case. The section states that the Secretary "shall proscribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety...." 45 U.S.C. § 431(a)(1). The Secretary has delegated this rule making authority to the FRA. 49 C.F.R. § 1.49(m). The authority to enforce these rules and to assess civil penalties for their violation is included in subsequent sections. See 45 U.S.C. § 437 (Secretary authorized to issue orders directing compliance); 45 U.S.C. § 438 (Secretary shall assess civil penalties against any railroad in violation).

The question of whether a statute creates a private cause of action is primarily a question of legislative intent. Thompson v. Thompson, 484 U.S. 174, 179 (1988). As guidelines, the federal courts look to the factors set out in the seminal case Cort v. Ash, 422, U.S. 66, 78 (1975). The four factors are: (1) Is the plaintiff one of the class for whose especial benefit the statute was enacted; (2) is there any indication of legislative intent to create a private remedy; (3) is such a remedy consistent with the purposes of the underlying legislative scheme; and (4) is the cause of action traditionally one entrusted to state law? Court v. Ash, 422 U.S. 66, 78 (citations omitted); See also Daily Income Fund, Inc. v. Fox, 464 U.S. 523 (1984).

Despite the numeration of this four-factor test, the most important factor is clear: Unless legislative intent to create a private cause of action appears, expressly or implicitly, from the language or structure of the statute or some other source, "the essential predicate for implication of a private remedy simply does not exist." Thompson, id., (quoting Northwest Airlines, Inc. v. Transp. Workers, 451 U.S. 77, 94 (1981)); see also Suter v. Artist M., 112 S.Ct. 1360, 1370 (1992) (Congressional intent most important factor); Community and Economic Dev. Ass'n v. Suburban Cook County Area Agency on Aging, 770 F.2d 662 (7th Cir.1985).

*3 Generally, there is a strong presumption against finding an implied cause of action. West Allis Memorial Hosp., Inc.

v. Bowen, 852 F.2d 251, 254 (7th Cir.1988); In re Olympia Brewing Co. Sec. Litig., 674 F.Supp. 597, 609 (N.D.Ill.1987). District courts must exercise caution in finding such under a federal statute or rule. Soft Drink Indus. Local Union No. 744 v. Coca-Cola Bottling Co. of Chicago, 679 F.Supp. 743, 746 (N.D.Ill.1988).

Further, the burden of demonstrating the existence of each of the four Cort factors rests with the plaintiff. Suter v. Artist M., 112 S.Ct. 1360, 1370 (1992). Debiasio has failed to meet that burden here, spending the pages of his Response on the irrelevant issue discarded above and in attempting to distinguish contrary authority. Therefore, we must analyze the issues without the benefit of the Plaintiff's wisdom.

For guidance in applying the Cort analysis to the present statute, we turn to the only reported case to address this issue in the federal courts, Abate v. Southern Pac. Transp. Co., 928 F.2d 167 (5th Cir.1991). Abate dealt generally with the issue of a private cause of action under the FRSA; specifically, it asked whether a private cause of action existed for violation of the drug-testing rules promulgated under the authority of sections 431, 437 and 438 of the FRSA. Though the regulations concerning drug testing are different from those at issue in the present case, the authority to enact them arises from the very same section of the FRSA as is at issue here, section 431, and we find Debiasio's attempts to distinguish Abate unpersuasive.

When analyzing the first Cort factor, we find that the language of the FRSA does not expressly identify railroad employees as the class whom Congress intended to receive the "especial benefit" of its provisions. Cort, 422 U.S. at 78; Abate, 928 F.2d at 169. The stated purpose of the Act is to "promote safety in all areas of railroad operations ...," 45 U.S.C. § 421, not merely among the members of a discrete group such as workers or passengers. The language of section 431 is but a command to a federal agency, creating no rights in individuals. See, e.g., id. (citations omitted).

As to the second Cort factor, we agree with the Fifth Circuit's holding that nothing about the language of section 421 suggests any congressional intent to create a private right of action on the part of railroad employees. See Abate,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



928 F.2d at 169. Rather than create a private cause of action, the FRSA creates an extensive regulatory scheme that places all authority over safety standards in the hands of the FRA and, in limited circumstances, certain state agencies. *See e.g.,* 45 U.S.C. § 434; *Abate, id.*

Further, the presence of such a pervasive scheme indicates that implying a private right of action would be inconsistent with the underlying legislative purpose of consolidating authority over railroad safety in the hands of the FRA. 45 U.S.C. § 434 (railroad safety standards to be nationally uniform). Therefore, the third *Cort* factor also indicates that Congress did not intend to provide a private remedy. *Id.* (citation omitted).

**\*4** With three of the *Cort* factors clearly militating against implying a private cause of action, yet another consideration convinces us that no implied private remedy was intended under the FRSA. Section 432(e) of the statute, not at issue here, gives a railroad employee a private right of action if the Secretary or his designees fail to act in certain emergency situations. 45 U.S.C. § 432(e). Where certain sections of a statute expressly create a private remedy, courts have refused to imply one in other sections of the same statute on the theory that "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Touche Ross & Co. v. Redington,* 442 U.S. 560, 570 (1978).

Debiasio has alleged that the regulations themselves, 49 C.F.R. § 215.123(d)(2), [FN2] give rise to a private cause of action. We reject this contention. It is true that a private remedy for violation of federal regulation may be implied when an private remedy exists under the empowering statute, *see e.g., Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 536-37 (9th Cir.1984). However, where no private remedy under the statute is found, none may be implied under its implementing regulations. The power of an administrative agency to adopt regulations pursuant to a statute is not the power to make law. Rather, it is limited to expressing the intent of the underlying statute. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 213-14 (1976). No private cause of action may be implied from an agency rule where, as here, the enabling statute does not allow such a private remedy and to do so would be inconsistent with the

purpose of the statute under which it was enacted. *Polaroid Corp. v. Disney,* 862 F.2d 987, 994 (3d Cir.1988).

### Conclusion

For the foregoing reasons, Illinois Central's Motion is granted. Debiasio's Count III is dismissed.

> FN1. On a motion to dismiss, the court views the allegations of the complaint as true. *Powe v. Chicago,* 664 F.2d 639, 642 (7th Cir.1981). Thus, the facts herein are gleaned from Debiasio's Complaint.

> FN2. This subpart provides, in relevant portions, that "A railroad may not place or continue in service a car, if-- ... (d) The car has a knuckle pin or knuckle thrower that is: (1) Missing; or (2) Inoperative...." 49 C.F.R. § 215.123(d).

1992 WL 297396 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:92CV02281 (Docket) (Apr. 03, 1992)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.