IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

THOMAS BAUER, et al.,                )
                                     )
            Plaintiffs,              )
                                     )
      v.                             )    Case No. C03-4110-DEO
                                     )
BURLINGTON NORTHERN AND              )
SANTA FE RAILWAY COMPANY,            )
                                     )
            Defendant.               )

**THE UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS CROSS-MOTION FOR A PROTECTIVE ORDER AND
RESISTANCE TO PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
PROHIBITING INTERFERENCE BY THE FEDERAL RAILROAD
ADMINISTRATION WITH PLAINTIFFS' EXPERT WITNESSES**

**Table of Contents**

                                                                **Page**

I.    STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      Background on the Federal Housekeeping Statute and DOT's Touhy Regs . . . 3
      Background on the Former FRA Employees . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      Material Facts of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      1.    Standard for a Protective Order  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      2.    The Court Lacks Jurisdiction to Compel FRA to Authorize its Employees to
            Provide Testimony or Information Contrary to DOT's Touhy Regs    . . 12
      3.    Plaintiffs May Only Raise an APA Challenge to FRA's Decision Under
            Touhy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      4.    The EGA Authorizes FRA to Preclude The Former Employees From
            Testifying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
      5.    The Court Should Stay Testimony Pending BNSF's Dispositive  Motion  21

IV.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I. STATEMENT OF THE CASE

COMES NOW the United States of America, by and through its undersigned counsel, and pursuant to N.D. IA L.R. 7.1., respectfully files its Memorandum of Points and Authorities in Support of its Cross-Motion for a Protective Order and Resistance to Plaintiffs' Motion for a Protective Order Prohibiting Interference by the Federal Railroad Administration with Plaintiffs' Expert Witnesses.

The United States files this Cross-Motion for a Protective Order ("Cross-Motion") to preclude former Federal Railroad Administration ("FRA") employees George Gavalla, Bruce Fine,[1] and Paul Byrnes, Esq., from testifying at the November 9, 2005 evidentiary hearing, and limit their testimony to a single deposition consistent with the United States Department of Transportation ("DOT") regulations at 49 C.F.R. Part 9, a.k.a. the "Touhy" regulations.[2]

Contrary to plaintiffs' assertion that FRA continues to interfere with their expert witnesses, Plaintiffs' Motion for a Protective Order Prohibiting Interference by the Federal Railroad Administration with Plaintiffs' Expert Witnesses ("Plaintiffs' Motion") at 1, the United States maintains that FRA is exercising its proper authority under the DOT's Touhy regulations in denying plaintiffs' request for Messrs. Gavalla's, Fine's, and Byrnes's testimony at the hearing and agreeing to permit the plaintiffs to depose the former FRA employees. First, the doctrine of sovereign immunity provides that the

---

[1]Mr. Fine has informed the Government that he will not appear at the November 9, 2005 hearing. Declaration of Bruce M. Fine ¶ 5 ("Fine Decl."), a copy of which is attached hereto as Government Exhibit 1.

[2]FRA is an agency in DOT and is responsible for implementing the Touhy regulations with respect to current and former employees. See, e.g., 49 U.S.C. § 103; 49 C.F.R. § 9.3 (definition of "Department").

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., is the exclusive basis for challenging the agency's decision. In other words, judicial review is limited to the APA's "arbitrary and capricious" standard. See 5 U.S.C. § 706(2)(A).

Second, the Government is authorized to preclude these former FRA employees from testifying to protect its interests under the Ethics in Government Act ("EGA"), 18 U.S.C. § 207, to prevent them from "switching sides" in a matter in which FRA has a direct and substantial interest. Specifically, the United States intends to prevent the former employees from disclosing information that may be protected under the attorney-client and deliberative process privileges.[3] Finally, the Government believes that the Court should stay plaintiffs' discovery until it rules on the Burlington Northern and Santa Fe Railway Company's (now BNSF Railway Company) ("BNSF") dispositive motion under Fed. R. Civ. P. 12(b)(1). The United States agrees with BNSF that there is no private right of action under the Federal railroad safety laws,[4] 49 U.S.C. §§ 20101 et

---

[3]Although the United States asserts the deliberative process and attorney-client privileges at this juncture, it is without sufficient information about the scope and depth of the proposed testimony to flesh out the communications it wants protected and the basis for advancing these privileges. The Government therefore respectfully reserves the right to brief this issue should circumstances warrant.

[4]The specific Federal railroad safety laws ("Safety Laws") are the Federal railroad safety laws, 49 U.S.C. §§ 20101-20153; the Safety Appliance Laws, 49 U.S.C. §§ 20301-20306; the Signal Inspection Laws, 49 U.S.C. §§ 20501-20505, the Locomotive Inspection Laws, 49 U.S.C. §§ 20701-20703; the Accident Reports Laws, 49 U.S.C. § 20901-20903, the House of Service Laws, 49 U.S.C. §§ 21101-21108, and the Safety Laws' penalty provisions, 49 U.S.C. §§ 21301-21311. The Federal regulations implementing the Safety Laws are found at 49 C.F.R. parts 213 through 244. The Secretary of Transportation has delegated authority to FRA to issue, administer, and enforce these regulations at 49 C.F.R. § 1.49(c), (d), (f), (g), and (m). FRA also administers and enforces the Federal hazardous material transportation law ("Hazmat Law"), 49 U.S.C. §§ 5101 et seq., and its implementing regulations, 49 C.F.R. parts 100 through 180, "as it pertains to the shipment or transportation of hazardous

2

seq., meaning that the Court should dismiss the lawsuit at the outset.

In summary, the United States requests that the Court preclude live testimony of the former FRA employees and limit their testimony to a single deposition consistent with DOT's Touhy regulations. See Fed. R. Civ. P. 26(c)(1)-(4).

## II. SUMMARY OF FACTS

Background on the Federal Housekeeping Statute and DOT's Touhy Regulations

DOT's Touhy regulations were issued pursuant to the Federal Housekeeping Statute, 5 U.S.C. § 301.[5] This statute has a long and clear history since its original enactment in 1789 to aid President George Washington in his organization of the Executive departments. 1 Stat. 72 (1789); see Chrysler Corp. v. Brown, 441 U.S. 281, 309 (1979). Department heads have authority to centralize decisions for releasing information through documents or testimony. Id. at 310; H.R. Rep. No. 1461, 85th Cong., 2d Sess. 7 (1958). The courts have repeatedly upheld regulations centralizing authority to release information, declaring that the regulations carry the force of law because they are within the contemplation of the grant of authority for orderly management in the housekeeping statute. Chrysler Corp. v. Brown, 441 U.S. at 309; Boske v. Comingors, 177 U.S. 459 (1900).

Regulations that limit or preclude Federal employees from testifying stem from

---

materials by rail." 49 C.F.R. Part 209, App. A; see also 49 C.F.R. § 1.49(s)(1) for authority delegated by the Secretary to FRA to administer and enforce the Hazmat Law.

[5]The other statutes cited as authority–45 U.S.C. §§ 41-42 (now recodified at 49 U.S.C. §§ 20901,20903, 21302, and 21304); 49 U.S.C. 322, 504(f); and 23 U.S.C. 409–are inapplicable to this proceeding. See 57 Fed. Reg. 9224, 9227 (1992) for a summary of these statutory provisions.

the landmark Supreme Court case, United States ex rel Touhy v. Ragen, 340 U.S. 462 (1951). In Touhy, an FBI special agent was subpoenaed to produce investigatory information in a Federal habeas corpus proceeding to support an Illinois inmate's contention that his conviction was brought about by fraud. Id. at 464-65. The agent requested instructions from his superiors and was jailed for contempt of court when he declined to produce the files on orders from the Attorney General. Id. at 465. The Supreme Court held that an employee of the Department of Justice ("DOJ") had no discretion to honor a demand for official information and that he was bound to follow the lawful orders of the Attorney General. Id. at 467. Consequently, the Court ordered that the agent be released because he simply was following the discretionary instruction of his superior.

Consistent with Touhy, DOT, like many other Government agencies, promulgated regulations governing employee testimony. DOT issued these regulations, inter alia, to "[m]aintain the Department's impartiality among private litigants; [a]void spending the time and money of the United States for private purposes; and to protect confidential, sensitive information and the deliberative processes of the Department." 49 C.F.R. § 9.1(b)(3)-(5). The regulations, which cover both current and former employees,[6] 49 C.F.R. § 9.3, apply to proceedings in which the United States is a party and to proceedings involving private litigants requesting testimony "concerning information acquired in the course of an employee performing official duties or because

---

[6]It is axiomatic that an agency's Touhy regulations apply to former employees. See U.S. v. Bizzard, 674 F.2d 1382, 1387 (11th Cir.), cert. denied, 459 U.S. 973 (1982); Ho v. U.S., 374 F. Supp.2d 82, 83 (D.D.C. 2005) (agency's Touhy regulations apply to former employees who have information acquired during employment).

4

of the employee's official status." 49 C.F.R. 9.2.  DOT believes that it may protect all

forms of proprietary information, including such information retained by former

employees.  58 Fed. Reg. 6719, 6722 (1993).  In particular, "[t]he disclosure of

sensitive, confidential information by a former employee . . . can be just as detrimental

to an agency's deliberative processes as would the disclosure of such information by a

current employee."  Id.  Consequently, "[t]he departure of an employee from the

Department does not confer upon the employee the right to disregard the confidential or

proprietary nature of the information that employee has received as an employee and to

disclose it to the general public."[7]  Id.

Generally, no DOT employee may testify about any information "acquired as part

of the performance of that employee's official duties or because of that employee's

official status unless authorized in accordance with this part. . . ."  49 C.F.R. § 9.5.  A

private litigant requesting testimony must comply with 49 C.F.R. 9.15(a), specifically,

identifying (i) a summary of the unresolved issues applicable to the testimony sought,

(ii) a summary of the testimony sought and its relevan[ce] to the proceeding, (iii) a

certification with support that the information desired is not reasonably available from

other sources . . ., and (iv) a declaration that the party will not seek expert or opinion

testimony from the witness or seek the testimony of the witness at a hearing or trial in

_____

[7]DOT, however, permits a former employee to testify on matters in which that
person did not participate in or work on while a DOT employee, provided that the
testimony does not purport to speak for the Department or disclose confidential,
sensitive information or information about DOT's deliberative processes.  Memorandum
from Stephen H. Kaplan, DOT General Counsel, to Chief Counsel and Assistant
General Counsel for Litigation 2 (Sept. 26, 1994) ("Kaplan Memo"), a copy of which is
attached as Exhibit 1 to Plaintiffs' Brief in Support of Motion for a Protective Order
("Plaintiffs' Brief").

the proceeding. 49 C.F.R. § 9.15(a)(3)-(5), (7); <u>see</u> <u>also</u> 49 C.F.R. § 9.9(c), (d). (The

DOT regulations also prohibit an employee from disclosing confidential or privileged

information absent consent by agency counsel and testifying as to facts that agency

counsel believes are contrary to the Department's interest if disclosed. 49 C.F.R. §

9.9(b)(3), (4).) The <u>Touhy</u> regulations further require that a request specify the form of

testimony sought, which is limited to a deposition, affidavit, declaration, or answer to

interrogatories, and authorize FRA to select the least burdensome form of testimony

that will provide the information needed. 49 C.F.R. 9.15(a). Finally, FRA either

approves or denies the request for testimony and may attach conditions to its approval.

49 C.F.R. § 9.15(c).

When a private litigant, however, makes a demand for testimony, FRA is

authorized to ask that the demand be withdrawn. <u>See</u> 49 C.F.R. § 9.11(c). Should the

litigant refuse to withdraw the demand, FRA may seek to quash it. 49 C.F.R. § 9.11(d).

Moreover, should a court decline FRA's motion to quash, fail to stay a demand, or order

compliance with the demand, the <u>Touhy</u> regulations authorize FRA to "respectfully

refuse to provide any testimony". 49 C.F.R. § 9.11(e). It is DOT's position that an

agency, "consistent with longstanding case law, [may] direct the employee not to

testify." 58 Fed. Reg. at 6720. <u>Accord</u> <u>id</u>. at 6722 (rules "compelling employees to

refuse to testify have passed judicial muster as a valid exercise of executive power in

the public interest"). In short, DOT's <u>Touhy</u> regulations provide a procedural framework

for a private litigant seeking employee testimony. The regulations balance the litigant's

interest in testimony against the Government's interest to protect deliberative or

confidential information and thus serve as a permissible agency housekeeping rule to

6

carry out 5 U.S.C. § 301. 58 Fed. Reg. at 6722.

The following is a summary of Messrs. Gavalla's, Fine's, and Byrnes' employment with FRA and the duties they performed during their tenure with the agency.

*1. George Gavalla*

Mr. Gavalla was employed by FRA from October 15, 1995, to September 28, 2004. Mr. Gavalla was the agency's Associate Administrator for Safety from January 31, 1999 until his departure, and his duties included enforcing "all Federal laws and related regulations that are designed to promote the overall safety of the National rail network" and "direct[ing] the establishment of criteria and procedures for accomplishing the inspection, maintenance, corrections, reports and certification" of railroad infrastructure, rolling stock, and rolling equipment, "subject to the rules and regulations issued by FRA." Position Description, Associate Administrator for Safety, ES-0340, a copy of which is attached hereto as Government Exhibit 2.

*2. Bruce M. Fine*

Mr. Fine was employed by FRA from April 13, 1975, to August 2, 1997. Mr. Fine was the agency's Associate Administrator for Safety from April 16, 1995, to June 22, 1997. His duties included serving as the chief Federal Government railroad safety official, formulating and promoting national railroad safety policies, legislation, and regulations, and developing and administering FRA's safety program to promote safe operating and mechanical practices in the railroad industry. Fine Decl. ¶ 2.

*3. Paul F. Byrnes*

7

Mr. Byrnes was employed by FRA from August 13, 1998, to June 30, 2001. Mr. Byrnes was a Trial Attorney in the agency's Office of Chief Counsel and, inter alia, was responsible for transmitting and settling cases containing violation reports against railroads and shippers of hazardous materials and drafting regulatory documents, e.g., proposed rules and final rules. In particular, Mr. Byrnes was responsible for handling cases transmitted against CSX Transportation, Inc. ("CSXT"), a Class I railroad,[8] and drafting the Steam Locomotive Inspection and Maintenance Standards, 49 C.F.R. Part 230.

Material Facts of the Case

Plaintiffs, which include members of the United Transportation Union ("UTU"), train service employees, the UTU's local chapter, and BNSF Railway Company's Brotherhood of Maintenance of Way Employes ("BMWE"), filed the present lawsuit against BNSF on November 14, 2003, alleging violations of the Safety Laws, the Iowa Public Policy Tort Doctrine, the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151 et seq., and the Due Process Clause of the Fifth Amendment, and seeking declaratory and injunctive relief and monetary damages.[9] BNSF moved to dismiss the case, in part, on the ground that the Court is without subject matter jurisdiction because the Safety Laws provide no private right of act against the railroad. In support of its motion, the railroad

---

[8]A Class I railroad is a rail carrier that generates operating revenue, measured in inflation-adjusted 1991 dollars, in excess of $250 million per year for a period of three successive years. 49 C.F.R. part 1201; General Instructions 1-1. There are seven Class I railroads in the United States.

[9]The Government notices that plaintiffs reinstated the Iowa Public Policy Doctrine and Railway Labor Act claims, which the Court dismissed on June 6, 2005, and added the Due Process count in its Amended Complaint filed July 26, 2005.

filed FRA Chief Counsel S. Mark Lindsey's (signed by FRA Deputy Chief Counsel Michael T. Haley) August 23, 2004 letter ("Lindsey Letter") to plaintiffs' counsel, which invited plaintiffs to coordinate with FRA in identifying BNSF's safety problems to remedy deficiencies and reach an effective and expedient resolution alleged in the lawsuit. <u>See</u> Exhibit 2 to Plaintiffs' Brief for a copy of the Lindsey Letter.

On June 6, 2005, the Court dismissed plaintiffs' Iowa Public Policy Doctrine and RLA claims under Rule 12(b)(1), but reserved judgment on the Safety Laws claim pending further briefings and hearings. Of note, the Court invited Messrs. Lindsey and Haley to testify about the Lindsey Letter. Both officials, however, respectfully declined.

On June 29, 2005, Harry Zanville, who is co-counsel for plaintiffs, contacted FRA Senior Trial Attorney Jonathan Kaplan in which he indicated that plaintiffs may call Messrs. Gavalla, Fine, and Byrnes to testify. FRA informed plaintiffs' counsel about DOT's <u>Touhy</u> regulations and the procedures governing a request for employee testimony. (A copy of the Letter from Michael T. Haley to Harry Zanville (Jul. 1, 2005) is attached hereto as Government Exhibit 3.)

On August 2, 2005, Mr. Zanville made a request for testimony of the three former employees under 49 C.F.R. § 9.15(a), indicating that plaintiffs would seek to introduce live testimony in which their testimony would focus "on FRA regulations and policies, how FRA regulations and policies are interpreted, the extent and effect of regulated carrier influence upon FRA rule and policy promulgation and enforcement, and the past, current, and future effect of FRA ineffectiveness on worker, shipper, and public

9

safety."[10]  (A copy of the E-mail from Harry Zanville to Jonathan Kaplan (Aug. 2, 2005) is attached hereto as Government Exhibit 5.)  On August 8, 2005, FRA denied plaintiffs' request under 49 C.F.R. § 9.15(c) on the grounds that DOT's <u>Touhy</u> regulations prohibit trial or hearing testimony and the manner and scope of the proposed testimony of the former employees may involve expert or opinion testimony that arise out their official duties or DOT functions.  (A copy of Letter from Michael T. Haley to Harry Zanville (Aug. 8, 2005) is attached hereto as Government Exhibit 6.)  Nevertheless, FRA indicated that the agency would permit plaintiffs to depose the former employees, provided that they take one deposition, and not trial testimony, of each witness and clarify the scope of the testimony requested to preclude testimony about matters within their official duties or functions or privileged communications.  Further communications between FRA and plaintiffs proved futile despite the agency's efforts to promote deposition testimony.  (A copy of the Aug. 10 and 11, 2005 E-mails exchanged between Jonathan Kaplan and Harry Zanville are attached hereto as Government Exhibit 7.)

On September 1, 2005, FRA issued letters to the former FRA employees, informing them of the agency's decision and advising them of the EGA requirements that apply to their post-employment activities.  A copy of Letters from S. Mark Lindsey to George Gavalla, Bruce Fine, and Paul Byrnes (Sept. 1, 2005) are attached hereto as Government Exhibits 8 through 10, respectively.)  On September 8, 2005, FRA reiterated its commitment to permit plaintiffs to depose the former employees, but added

---

[10]Plaintiffs also made a Freedom of Information Act, 5 U.S.C. § 552, request for documents.  FRA's August 12, 2005 response and documents produced are attached hereto as Government Exhibit 4.

10

that live testimony may violate the EGA.  (A copy of Letter from Michael T. Haley to

Harry Zanville (Sept. 8, 2005) is attached as Exhibit 2 to Plaintiffs' Brief.)   Plaintiffs then

filed the instant Motion on September 23, 2005.[11]

### III.  ARGUMENT

THE COURT SHOULD ENTER A PROTECTIVE ORDER PRECLUDING THE
FORMER FRA EMPLOYEES FROM TESTIFYING AT THE HEARING

1.     Standard for a Protective Order.

Rule 26(c) provides that the Court may issue a protective order "where justice

requires to protect a party or person from annoyance, embarrassment, oppression or

undue burden or expense."  Fed. R. Civ. P. 26(c).  The person seeking a protective

order must show "good cause", meaning that it must demonstrate "that specific

prejudice or harm will result if no protective order is granted."  Eberts v. Kawasaki

Motors Corp., No. A1-02-43, 2003 WL 2209788, at *2 (D. N.D. Sept. 9, 2003).

Protective orders apply to nonparties subject to discovery, Seattle Times Co. v.

Rhinehart, 467 U.S. 20, 35 (1984), and the unwanted burden of discovery imposed on a

nonparty is entitled to special weight.  Misc. Docket Matter #1 v. Misc. Docket Matter #2,

197 F.3d 922, 927 (8th Cir. 1999).  Additionally, the Government has substantial interest

in protecting the integrity of its processes and discovery abuse that culminates in

coerced production of information "is sufficient justification for the authorization of

protective orders."  Seattle Times, 467 U.S. at 35-36.  Put simply, FRA has substantial

interest in requiring a private litigant to comply with DOT's Touhy regulations to

_____

[11]Although plaintiffs filed their pleadings on September 23, 2005, they first
informed FRA of their Motion on September 30, 2005.

11

"[m]aintain the Department's impartiality among private litigants; [a]void spending the time and money of the United States for private purposes; and to protect confidential, sensitive information and the deliberative processes of the Department." 49 C.F.R. § 9.1(b)(3)-(5). See Ferrell v. Yarberry, 848 F. Supp. 121, 123 (E.D. Ark. 1994) ("agencies' impartiality will be damaged if they support or give the appearance of supporting one side rather than the other in a case between private litigants"). Requiring FRA to permit live testimony contrary to the regulations would sanction such discovery abuse and promote more such abuse. Good cause thus exists to grant the United States a protective order.

2.      The Court Lacks Jurisdiction to Compel FRA to Authorize its Employees to Provide Testimony or Information Contrary to DOT's Touhy Regulations.

The doctrine of sovereign immunity provides that "the United States cannot be sued at all without consent of Congress." Block v. North Dakota, 461 U.S. 273, 287 (1983). This principle applies even if the United States is not a named party when the judgment sought would interfere with the public administration or "restrain the [G]overnment from acting, or . . . compel it to act." Dugan v. Rank, 372 U.S. 609, 620 (1963). Accord Coleman v. Espy, 986 F.2d 1184, 1189 (8th Cir.), cert. denied, 510 U.S. 913 (1993). Such consent must be clear and unequivocal and waivers of sovereign immunity should be strictly construed. Coleman, 986 F.2d at 1189.

It is well settled law that a Federal court is without jurisdiction to compel testimony of agency employees when that agency has declined to allow testimony. In re Charges of Unprofessional Conduct Against 99-37 v. Stuart, 249 F.3d 821, 825 (8th Cir. 2001); Comsat Corp. v. National Science Foundation, 190 F.3d 269, 277 (4th Cir. 1999)

12

("it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena"). Edwards v. Dep't of Justice, 43 F.3d 312, 317 (7th Cir. 1995). Indeed, the Eighth Circuit recognizes that an agency may restrict testimony of its employees by the issuance of valid regulations. See Schutterle v. U.S., 74 F.3d 846, 848 (8th Cir.), cert. denied, 517 U.S. 1210 (1996). See also Dent v. Packerland Packing Co., 144 F.R.D. 675, 678 (D. Neb. 1992) (Touhy recognizes that Federal agencies are authorized "to restrict subordinates from participating in judicial proceedings"); Ferrell v. Yarberry, 848 F. Supp. at 123 (same).

In the present case, plaintiffs have moved for a protective order to permit the FRA former employees to testify at the hearing. FRA denied their request for live testimony. The agency's decision is a policy decision, which the Court should respect "because [the] Constitution vests such responsibilities in the political branches." Comsat, 190 F.3d at 278 (internal quotations and citation omitted). Accordingly, sovereign immunity applies, leaving the Court without jurisdiction to hear the case absent a waiver. See U.S. EPA v. General Electric Co., 197 F.3d 592, 597 (2d Cir. 1999) (sovereign immunity bars enforcement of subpoena that would compel agency to act absent waiver); Stuart, 249 F.3d at 825 (subpoena for U.S. trustee to testify in disciplinary hearing quashed when the DOJ did not waive sovereign immunity); FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("[s]overeign immunity is jurisdictional in nature").

3.  Plaintiffs May Only Raise an APA Challenge to FRA's Decision Under Touhy.

The Eighth Circuit instructs that the APA authorizes judicial review to permit challenges to agency actions. Preferred Risk Mutual Ins. Co. v. U.S., 86 F.3d 789, 792 (8th Cir. 1996), cert. denied, 520 U.S. 1116 (1997). Specifically, 5 U.S.C. § 702 provides

13

that a party must identify the statute or rule that is at issue. <u>Id</u>. Put another way, a

party must contest an agency's exercise of discretion in its <u>Touhy</u> decision. <u>Dent</u>, 144

F.R.D. at 679.

As a result, judicial review is limited to whether an agency's decision was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A). <u>Preferred Risk Mutual</u>, 86 F.3d at 792; <u>Dent</u>, 144 F.R.D. at 679;

<u>see</u> <u>also</u> <u>Houston Business Journal, Inc. v. Office of Comptroller of Currency</u>, 86 F.3d

1208, 1212 (D.C. Cir. 1996) (<u>Touhy</u>-based denial reviewed under "arbitrary and

capricious standard"); <u>General Electric</u>, 197 F.3d at 599 (same). Review under the

"arbitrary and capricious" standard is quite limited, and the Court may not substitute its

judgment for that of the agency. <u>Western Nebraska Resources Council v. EPA</u>, 793

F.2d 194, 200 (8th Cir. 1986). Restated, the Court must "consider whether the decision

was based on a consideration of the relevant factors and whether there has been a

clear error of judgment." <u>Motor Vehicle Manuf. Ass'n v. State Farm Mutual Automobile</u>

<u>Ins. Co.</u>, 463 U.S. 29, 43 (1983).

Plaintiffs' challenge to FRA's decision is predicated on <u>U.S. ex rel. O'Keefe v.</u>

<u>McDonnell Douglas Corp</u>., 132 F.3d 1252 (8th Cir. 1998), in which the Court held, in

part, that the Federal Housekeeping Statute authorized DOJ to issue only internal

agency procedures. <u>See</u> <u>also</u> <u>U.S. v. Boeing Co.</u>, 189 F.R.D. 512 (S.D. Ohio 1999).[12]

Plaintiffs' analysis, however, is misplaced. <u>McDonnell Douglas</u> concerned DOJ making

---

[12]In <u>Boeing</u>, the Court held that the Government could not employ the <u>Touhy</u>
regulations when it was a party to the litigation. <u>U.S. v. Boeing Co.</u>, 189 F.R.D. 512,
517 (1999). These facts are clearly distinguishable for those in this case in which the
United States remains a nonparty and thus is not subject to the same discovery rules.

14

ex parte contacts with employees of a company that was the subject of a qui tam action filed under the False Claims Act. The Government challenged the company's motion for a protective order on the ground that its regulations authorized contact with represented persons without first obtaining the consent of corporate counsel. The Eighth Circuit disagreed, holding that DOJ could not issue regulations that exempt itself from state and local Federal ethics rules governing other litigants. McDonnell Douglas, 132 F.3d at 1255, 1257.

Nevertheless, the Court's analysis of Touhy and its progeny is mere dicta and not dispositive in the instant case. The focus is whether 5 U.S.C. § 301 authorizes DOT to issue its Touhy regulations. Subsequent to McDonnell Douglas, the Eighth Circuit ruled that "Congress has provided that the head of a [F]ederal executive department may regulate the use of department, records, paper, and property", Charges of Unprofessional Conduct, 249 F.3d at 823, citing the Federal Housekeeping Statute, including requiring department permission before an employee may testify in a proceeding. Id. Other decisions in this Circuit support the same proposition. See Schutterle, 74 F.3d at 848 (Touhy regulation is Constitutional); Ferrell, 848 F. Supp. at 123 ("[t]he U.S. Supreme Court has explicitly recognized the authority of agency heads to restrict testimony of their subordinates by [Touhy] regulations"); Dent, 144 F.R.D. at 678 ("regulations promulgated under 5 U.S.C. § 301 and codified . . . are presumed valid"). Consequently, the Federal Housekeeping Statute authorizes DOT to issue its Touhy regulations.

Applied here, FRA properly exercised its discretion in denying plaintiffs' request. The agency informed plaintiffs that its Touhy regulations prohibit live testimony under 49

C.F.R. § 9.9(d) to "minimize the adverse impact of [private] litigation upon [the Department] and the public by placing the primary burden for conducting such litigation on the private litigants where it reasonably belongs" and "not foster additional private litigation." Letter from Michael T. Haley to Harry Zanville 1 (Aug. 8, 2005). Additionally, FRA would not permit testimony in which the former employees may speak for the agency or divulge "confidential or sensitive information or anything about the agency's deliberative processes." Id. FRA believes that it must prevent the former employees from disclosing sensitive, confidential, or proprietary information received while they were employed to protect its deliberative processes.[13] See 58 Fed. Reg. at 6722. Preserving the deliberative process and attorney-client privileges are critical to encourage "the flow of independent thought and honest opinion regarding agency policy and action", U.S. v. Miracle Recreation Equipment Co., 118 F.R.D. 100, 108 (S.D. IA 1987), and promote "confidential communications between government agency attorneys and their agency leaders." EEOC v. Pasta House Co., No. 4:94CV1715, 1996 WL 153959, at *1 (E.D. Mo. Feb. 6, 1996). Such testimony would inhibit Government officials from providing candid comments and criticism of various positions taken regarding controversial policy issues, thereby weakening FRA's ability to have the benefit of all points of view when deciding how to shape recommendations on important

---

[13]Plaintiffs' assertion that the existence of a conflict of interest between the United States and former employees overrides government representation, citing U.S. v. Talao, 222 F.3d 1133 (9th Cir. 2000), is misplaced. Talao reasoned that an attorney could not represent both a company and an individual if the person either would commit perjury or testify about criminal activity in the organization. Conversely, the Government intends to protect deliberative communications and prevent the appearance of the conflict by precluding testimony, which serve the interest of the Touhy regulations and EGA.

16

policy issues. In short, FRA must ensure that the testimony "properly and fairly reflects official [agency] views" and not reveal internal communications that may prove detrimental to the agency's policymaking ability. 58 Fed. Reg. at 6722.

Finally, FRA concluded that it would not allow the former employees to provide live testimony as expert or opinion witnesses on matters that arose out of their official duties or DOT functions to ensure that the agency's impartiality to private litigants is not compromised and to protect its deliberative processes. See 58 Fed. Reg. at 6720; 49 C.F.R. § 9.1(b)(3). The rule is intended to protect FRA from former employees disclosing information on matters worked on while employed by the Government or purporting to speak for the agency. See Kaplan Memo at 1, 2.

Against this prohibition, plaintiffs want the former employees to testify as to matters (i) "how and why . . . FRA is not doing its job and explain its consequences", (ii) that "may embarrass FRA and/or its leadership", and (iii) in which the agency is "try[ing] to obstruct the truth from being made public".[14] E-mail from Harry Zanville to Jonathan Kaplan (Aug. 11, 2005). These broad queries would invite testimony that go to privileged communications. The agency therefore agreed to permit deposition testimony,[15] provided that plaintiffs narrowed the manner and scope of the issues to cover general expertise, knowledge, or personal views about railroad safety. See Letter

_____

[14]FRA respectfully informs the Court that it conducted more than 10,000 inspections of BNSF's operations in calendar year 2003 alone and collected $1,116,000 and $1,229,950 in civil penalties for fiscal years 2004 and 2005, respectively.

[15]Of note, depositions are intended to allow questioning parties to discover circumstantial facts and deponents to raise objections to explore the propriety of the privileges asserted. Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994).

from Michael T. Haley to Harry Zanville 2 (Aug. 8, 2005).  FRA's decision therefore is reasonable and should be sustained under the APA.  See Ferrell, 848 F. Supp. at 123 (U.S. Dep't of Agriculture's (("USDA") Touhy regulations sustained and enforced to prevent appearance of impartiality); Dent, 144 F.R.D. at 679 (deference to USDA's Touhy decision to prevent "creation of an appearance of favoring one litigant over another") (dictum); General Electric, 197 F.3d at 599 (EPA's Touhy regulations necessary to maintain confidentiality and prevent interference with government functions); Comsat, 190 F.3d at 278 (National Science Foundation's Touhy regulations designed to prevent agency "from becoming embroiled in private litigation").

4.    The EGA Authorizes FRA to Preclude The Former Employees From Testifying.

The EGA reads, in relevant part:

Any person who is an officer or employee (including any special Government employee) of the executive branch of the United States (including any independent agency of the United States) . . . and who, after the termination of his or her service or employment with the United States . . ., knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States . . ., on behalf of any other person (except the United States . . .) in connection with a particular matter–

(A) in which the United States . . . is a party or has a direct and substantial interest,

(B) in which the person participated personally and substantially as such officer or employee, and

(C) which involved a specific party or specific parties at the time of such participation, shall be punished as provided in section 216 of this title.

18 U.S.C. § 207(a)(1).  Correspondingly, under 18 U.S.C. § 207(a)(2):[16]

_____

[16]The Government notices that the one-year prohibition, 18 U.S.C. § 207(c)(1), is now inapplicable given Mr. Gavalla's September 28, 2004 separation from FRA.

Any person subject to the restrictions contained in paragraph (1) who, within 2 years after the termination of his or her service or employment with the United States . . ., knowingly makes, with the intent to influence, any communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States . . ., on behalf of any other person (except the United States    . . .), in connection with a particular matter–

(A) in which the United States . . . is a party or has a direct and substantial interest,

(B) which such person knows or reasonably should know was actually pending under his or her official responsibility as such officer or employee within a period of 1 year before the termination of his or her service or employment with the United States . . ., and

(C) which involved a specific party or specific parties at the time it was so pending,

shall be punished as provided in section 216 of this title.

In other words, § 207(a)(1) provides a lifetime prohibition on representing others in connection with a particular matter involving specific parties in which the former employee participated personally and substantially.  The two-year prohibition, 18 U.S.C. § 207(a)(2), prohibits an employee from representing others in connection with a particular matter involving specific parties that was pending under that employee's official responsibility during his or her last year of Federal employment.

In the instant case, plaintiffs intend to call the former employees to testify on matters involving FRA, BNSF, the UTU, and/or the BMWE that may involve deliberative process and attorney-client privileges.  <u>See</u>, <u>e.g.</u>, Plaintiffs Brief at 1, 2.  Such testimony invites the former employees to "switch sides", which undercuts government integrity and policy-making processes and enables them to improperly use specific privileged knowledge acquired during their public service against the Government itself.  <u>See</u> 5 C.F.R. § 2637.101(c)(1), (6); <u>U.S. v. Clark</u>, 333 F. Supp.2d 789, 793 (E.D. Wis. 2004).

19

Put simply, the EGA prohibits former employees from changing sides that "create[] a significant risk of injury to the legitimate interests of the United States." <u>Clark</u>, 333 F. Supp.2d at 796. Messrs. Gavalla and Fine, for example, were responsible for enforcing the Safety Laws, directing inspection programs, and implementing regulations that would reduce accident rates due to human error. <u>See</u> Position Description for Associate Administrator for Safety at 1, 2. As a former Trial Attorney, Mr. Byrnes was responsible for transmitting and settling cases against CSXT, a Class I railroad, and writing regulations that applied to the railroad industry. In summary, FRA properly invoked the EGA to protect the former employees from disclosing information that may be protected under the attorney-client and deliberative processes privileges. <u>Clark</u>, 333 F. Supp.2d at 796 (EGA protects Government proprietary interests); <u>U.S. v. Martin</u>, 39 F. Supp.2d 1333, 1335-36 (D. Utah 1999) (EGA prohibits conduct that could interfere with decisions necessary for effective government operation).

Finally, the EGA applies to court proceedings. <u>Tomlinson v. Florida Iron and Metal, Inc</u>., 291 F.2d 333, 335 (5th Cir. 1961). Although plaintiffs correctly note that 18 U.S.C. § 207(j)(6)(A) authorizes former employees to serve as expert witnesses pursuant to court order, the Government retains control under its "housekeeping rules" to limit or preclude agency information and personnel in litigation. <u>See</u> Office of Government Ethics Letter 90 x 4 (Mar. 7, 1990), a copy of which is attached hereto as Government Exhibit 11. Of note, the Government is authorized to preclude expert testimony when the testimony relating to that employee's official position or duties conflicts with the Government's interests. <u>Id</u>. Such a conflict exists in this matter, permitting FRA to preclude the former employees from testifying in Court.

20

Nevertheless, as previously noted, FRA has agreed to permit plaintiffs to depose the former employees. At bottom, the EGA and its implementing regulations impose restrictions on expert testimony and must be complied with before witnesses may testify, irrespective of DOT's <u>Touhy</u> regulations. <u>See</u> 58 Fed. Reg. at 6723.

5.    <u>The Court Should Stay the Testimony Pending BNSF's Dispositive Motion</u>.

      The United States respectfully submits that the Court should stay discovery, including the hearing, until it resolves the jurisdiction issue. The principle of judicial parsimony provides that the Court may stay discovery until dispositive issues have been decided. 8 Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, <u>Federal Practice and Procedure: Civil</u> § 2040, at 521 (2d ed. 1994). In the Eighth Circuit, a facial challenge to jurisdiction stays receipt of evidence until the Court determines whether the complaint avers subject matter jurisdiction. <u>Titus v. Sullivan</u>, 4 F.3d 590, 593 (8th Cir. 1993). <u>Osborn v. U.S.</u>, 918 F.2d 724, 729 (8th Cir. 1990) mandates that jurisdiction be reached at the outset to promote judicial economy. At bottom, plaintiffs must allege each element establishing jurisdiction before this case can proceed.

      BNSF correctly maintains that plaintiffs have no private right of action to enforce the Safety Laws against the railroad. <u>See</u>, <u>e.g.</u>, Defendant's Second Supplemental Brief in Support of Motion to Dismiss (filed Jul. 1, 2005). As explained in <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975), and its progeny,[17] Congress did not intend to create a private right of action, but rather intended to confer authority to FRA to implement an extensive

---

      [17]The Eight Circuit, for instance, has held that the Safety Appliance Laws provide no independent right of action for injured parties. <u>Moses v. Union Pacific Railroad</u>, 64 F.3d 413, 418 (8th Cir. 1995).

regulatory program to issue safety standards. The testimony of the former employees will have no bearing on the jurisdiction issue. Absent a private right of action, the Court is without jurisdiction under Fed. R. Civ. P. 12(b)(1) to hear the Safety Laws claim. In summary, BNSF's facial attack of the complaint warrants issuance of a protective order pending resolution of the dispositive motion. See Tilley v. U.S., 270 F. Supp.2d 731, 734-35 (M.D. N.C. 2003) (protective order issued staying discovery pending dispositive motion), aff'd, 85 Fed. Appx. 333 (4th Cir.), cert. denied, – U.S. –, 125 S. Ct. 64 (Oct. 4, 2004).

## IV. CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court issue a protective order precluding the former FRA employees from testifying at the hearing and limiting their disclosure of information in accordance with DOT's Touhy regulations, and grant whatever other relief the Court deems appropriate.

Respectfully submitted,

CHARLES W. LARSON, SR.
United States Attorney


By: /s/ Martha A. Fagg

MARTHA A. FAGG
Assistant United States Attorney
600 4th Street, Suite 670
Sioux City, IA 51101
712-255-6011
712-252-2034 (fax)
martha.fagg@usdoj.gov
usao.ian-civ-dc-sc@usdoj.gov
Direct Contact Email:Address:
carolynn.mcentaffer@usdoj.gov

22

OF COUNSEL:
S. MARK LINDSEY
Chief Counsel
MICHAEL T. HALEY
Deputy Chief Counsel
MARK TESSLER
Assistant Chief Counsel for Safety
BILLIE A. STULTZ
Deputy Assistant Chief Counsel for Safety
JONATHAN L. KAPLAN
Senior Trial Attorney

CERTIFICATE OF SERVICE

I certify that I mailed/electronically
mailed/hand/ delivered a copy of the
foregoing document to which this certificate
is attached to the parties or attorneys of
record, shown below, on October 19, 2005

UNITED STATES ATTORNEY

BY: s/ Carol McEntaffer

COPIES TO:

Scott H. Peters, Esq.
PETERS LAW FIRM, P.C.
233 Pearl Street
P.O. Box 1078
Council Bluffs, IA 51502-1078

Harry Zanville, Esq.
500 West Harbor Drive, Suite1213
San Diego, CA 92101
harrywz@cox.net

Charles A. Collins, Esq.
CHARLES A. COLLINS, P.A.
Labor and Professional Centre
411 Main Street, Suite 410
St. Paul, MN 55102
chas@citilink.com
Attorneys for Plaintiffs

23

David M. Pryor, Esq.
BNSF Railway Company
2500 Lou Menk Drive, AOB-3
Fort Worth, TX 76131-2828
david.pryor@bnsf.com

Mary Funk, Esq.
Thomas Cunningham, Esq.
NYEMASTER, GOOD, WEST,
    HANSEL & O'BRIEN, P.C.
700 Walnut, Ste. 1600
Des Moines, IA 50309
mef@nyemaster.com

Donald J. Munro, Esq.
GOODWIN PROCTER LLP
901 New York Ave., N.W.
Washington, D.C. 20001
dmunro@goodwinprocter.com
Attorneys for BNSF Railway Company