**From:** Kaplan, Jonathan
**Sent:** Wednesday, August 10, 2005 3:05 PM
**To:** 'Harry Zanville'
**Cc:** chas@citilink.com; Raylineweb@aol.com
**Subject:** RE: Bauer v BNSF

Harry--

Before we will turn to the proposed employee testimony you intend to raise, FRA reiterates that we will not permit live testimony at the hearing. If you agree to a deposition or an affidavit, we then will review the questions framed and determine whether they are, in whole or modified form, appropriate under DOT's Touhy regulations.

I would appreciate your response at your earliest convenience. Should we not reach an agreement on the manner and scope of the proposed testimony, we will seek to preclude the former employees from testifying.

Jon

P.S.: We referred to the UTU in our letter b/c the organization is identified as a co-plaintiff and individual plaintiffs are union members. We, however, recognize that the BMWE is another union listed on the caption.

> -----Original Message-----
> **From:** Harry Zanville [mailto:harrywz@cox.net]
> **Sent:** Wednesday, August 10, 2005 1:56 PM
> **To:** Kaplan, Jonathan
> **Cc:** chas@citilink.com; Raylineweb@aol.com
> **Subject:** Re: Bauer v BNSF
> **Importance:** High

Jon:

First, we request that the FRA, through its Chief Counsel or designee, approve the following Testimony Agreement. This proposed agreement is consistent with the law, with fairness, and the public interest. Please advise as soon as possible the FRA's decision and let me know if you have any questions.

Second, Mr. Haley's letter seemed to focus on the UTU. There are non-UTU plaintiffs and non-labor causes of action in this case so I am wondering why Mr. Haley mentioned the UTU six times. Please advise if the exclusivity of reference to the UTU was a clerical error or if that was purposeful.

Harry Zanville for the Plaintiffs

copy e-mailed to Charles Collins

TESTIMONY AGREEMENT

Since these are former employees, the testimony will be live, (either in person or video telephone) if the witness is agreeable.

The witness will answer questions as to their training; as to rules and regulations as applied by FRA; policies of FRA; and standard enforcement practices during their experience with FRA. They will further be asked particularly:

their training, as to procedure for response to employee reports of non-compliance conditions or management misconduct; and

their training as to procedures, rules, and regulations and standard practices of FRA; procedure for response to employee reports of management actions tolerating, encouraging or ordering violations and operations of non-complying equipment or procedure.

They will be asked about the veracity and accuracy of the statements and descriptions in the Lindsey letter (9/4/04), as to whether that accurately portrayed FRA policy and practice as carried out during their incumbency at FRA, and specifically in the 29 months preceding the Lindsey letter.

They will be asked about the accuracy of the testimony given by BNSF's two witnesses as to the effectiveness, practices and policies of FRA as actually applied in the field.

They will be asked what the consequences have been, where FRA is more lax or unresponsive in enforcement. It is agreed their will be no opinions asked for as to causes of any accidents investigated by FRA.

They will be asked about the actual interactions between BNSF officials and FRA officials, (including lobbyists) and the effects that has on enforcement and performing of agency duties.
---end----

## Kaplan, Jonathan

**From:** Harry Zanville [harrywz@cox.net]
**Sent:** Wednesday, August 10, 2005 4:14 PM
**To:** Kaplan, Jonathan
**Cc:** chas@citilink.com; Raylineweb@aol.com
**Subject:** Re: Bauer v BNSF

I will give you an answer shortly.

----- Original Message -----
From: Kaplan, Jonathan
To: Harry Zanville
Sent: Wednesday, August 10, 2005 1:06 PM
Subject: RE: Bauer v BNSF

We represent current and former employees and the Touhy regulations apply to both. In this matter, an FRA attorney will be present at any proceeding involving the former employees. We consider this matter closed unless you're willing to seek deposition and not hearing testimony.

-----Original Message-----
From: Harry Zanville [mailto:harrywz@cox.net]
Sent: Wednesday, August 10, 2005 3:55 PM
To: Kaplan, Jonathan
Cc: chas@citilink.com; Raylineweb@aol.com
Subject: Re: Bauer v BNSF

I understand but these are ex-FRA employees. They are not defendants and I truly do not understand why the government would expend any time or resources in representing them as employees.

DOT believes that hearing testimony is usually more time consuming than a deposition, causing the government to expend more time and resources in representing employees. See 57 Fed. Reg. 9224 (1992).

-----Original Message-----
From: Harry Zanville [mailto:harrywz@cox.net]
Sent: Wednesday, August 10, 2005 3:41 PM
To: Kaplan, Jonathan
Cc: chas@citilink.com; Raylineweb@aol.com
Subject: Re: Bauer v BNSF

Jon: Thanks for your prompt reply.

It would help if you would provide the rationale (not the rule) on which the FRA objects to ex-FRA employees voluntarily providing live testimony.

We understand and agree with the normative notion that the FRA and its employees should not be subjected to disruption of their work schedules. However, these are no longer FRA employees doing the work of the FRA. Because we fail to understand, we need you to explain how the FRA is adversely affected if these witnesses voluntarily opt to testify live.

Perhaps your only concern is whether questions asked would fall within the guidelines on which we may reach agreement. I am quoting your email where you wrote: "If you agree to a deposition or an affidavit, we then will review the questions framed and determine whether they

are, in whole or modified form, appropriate under DOT's Touhy regulations".

However, surely the Court, with the assistance of BNSF counsel, can be trusted to ensure that Plaintiffs do not violate the agreement. Equally clear is that not to trust BNSF counsel and the Court to properly understand the scope of such an agreement necessarily means FRA would be devoting unnecessary time of its staff counsel to monitoring the testimony of a deposition or while trying to excise the contents of affidavits.

You wrote that if "we [do] not reach an agreement on the manner and scope of the proposed testimony, we will seek to preclude the former employees from testifying." We'd greatly appreciate you indicating where and how you would "seek to preclude the former employees from testifying".

Thank you for the clarification of the references to the Plaintiffs.

**From:** Harry Zanville [harrywz@cox.net]
**Sent:** Wednesday, August 10, 2005 4:48 PM
**To:** Kaplan, Jonathan
**Cc:** chas@citilink.com; Rayllneweb@aol.com
**Subject:** Re: Bauer v BNSF

Jon:

It is not unusual to use deposition testimony in any civil case. What is so unusual is FRA's demand to have its lawyers present to exert current and future editorial control over the testimony being taken in those depositions.

There is no possible way for FRA, with a straight face, to claim that it will be present to "represent ... former employees" since FRA would only be serving its own narrow institutional purposes (not those of the ex-employees it claims to be representing). For example, think of the irony if the FRA claims it is representing former employees when those former employees are whistleblowers.

There is a quick solution to the representation problem here. **Would you consider it a solution for us to send you a affidavits from these ex-FRA employees informing you that they do not wish to be "represented" by FRA counsel.**

If we were to agree to deposition under your terms, it is clear that we will have a battle over the range questions being asked as previously disclosed to you. If we are going to have that fight, there is no reason to do it at deposition and then again before the court. It is more economical for everyone's purposes to have the battle once, not twice.

It occurs to me that since FRA apparently is committed to providing counsel for ex-employees who do not wish FRA's representation, why not provide them with the best counsel on your staff ? If you have Mr. Lindsay or Mr. Haley appear, we can solve all sorts of problems in Sioux City.

I am looking forward to your earliest reply.

Harry Zanville

----- Original Message -----
**From:** Kaplan, Jonathan
**To:** Harry Zanville
**Sent:** Wednesday, August 10, 2005 1:06 PM
**Subject:** RE: Bauer v BNSF

to both. In this matter, an FRA attorney will be present at any proceeding involving the former employees. We consider this matter closed unless you're willing to seek deposition and not hearing testimony.

-----Original Message-----
From: Harry Zanville [mailto:harrywz@cox.net]
Sent: Wednesday, August 10, 2005 3:55 PM
To: Kaplan, Jonathan
Cc: chas@citilink.com; Rayllneweb@aol.com
Subject: Re: Bauer v BNSF

I understand but these are ex-FRA employees. They are not defendants and I truly do not understand why the government would expend any time or resources in representing them as employees.

> DOT believes that hearing testimony is usually more time consuming than a deposition, causing the government to expend more time and resources in representing employees. See 57 Fed. Reg. 9224 (1992).
>
> -----Original Message-----
> From: Harry Zanville [mailto:harrywz@cox.net]
> Sent: Wednesday, August 10, 2005 3:41 PM
> To: Kaplan, Jonathan
> Cc: chas@citilink.com; Raylineweb@aol.com
> Subject: Re: Bauer v BNSF

Jon: Thanks for your prompt reply.

It would help if you would provide the rationale (not the rule) on which the FRA objects to ex-FRA employees voluntarily providing live testimony.

We understand and agree with the normative notion that the FRA and its employees should not be subjected to disruption of their work schedules. However, these are no longer FRA employees doing the work of the FRA. Because we fail to understand, we need you to explain how the FRA is adversely affected if these witnesses voluntarily opt to testify live.

Perhaps your only concern is whether questions asked would fall within the guidelines on which we may reach agreement. I am quoting your email where you wrote: "If you agree to a deposition or an affidavit, we then will review the questions framed and determine whether they are, in whole or modified form, appropriate under DOT's Touhy regulations".

However, surely the Court, with the assistance of BNSF counsel, can be trusted to ensure that Plaintiffs do not violate the agreement. Equally clear is that not to trust BNSF counsel and the Court to properly understand the scope of such an agreement necessarily means FRA would be devoting unnecessary time of its staff counsel to monitoring the testimony of a deposition or while trying to excise the contents of affidavits.

You wrote that if "we [do] not reach an agreement on the manner and scope of the proposed testimony, we will seek to preclude the former employees from testifying." We'd greatly appreciate you indicating where and how you would "seek to preclude the former employees from testifying".

Thank you for the clarification of the references to the Plaintiffs.

**From:** Kaplan, Jonathan
**Sent:** Thursday, August 11, 2005 2:51 PM
**To:** 'Harry Zanville'
**Subject:** RE: Bauer v BNSF

We will coordinate with the U.S. Attorney's for the N.D. IA and respond. I assume from your e-mail that you intend to contest our denial of your employee testimony request. If so, please advise whether you intend to subpoena the witnesses or the manner in which you intend to have them appear.

The agency will soon respond to your FOIA request.

> -----Original Message-----
> **From:** Harry Zanville [mailto:harrywz@cox.net]
> **Sent:** Thursday, August 11, 2005 2:34 PM
> **To:** Kaplan, Jonathan
> **Cc:** chas@citilink.com; Raylineweb@aol.com
> **Subject:** Re: Bauer v BNSF

Jon: I have two items this morning.

First, we checked with Judge O'Brien's scheduling clerk who indicated that the Court could make time to hear FRA's effort to block the testimony of the three ex-FRA employees on the first day of our scheduled hearings, September 13. How much time do you think you will need to present your arguments?

Second, how are you coming on the FOIA requests?

Harry Zanville

**From:** Kaplan, Jonathan
**Sent:** Thursday, August 11, 2005 3:18 PM
**To:** 'Harry Zanville'
**Subject:** RE: Bauer v BNSF

First, FRA represents all current and former employees involving matters within their official duties or status. 49 C.F.R. 9.2, 9.5, 9.9(b). Therefore, we continue to represent Messrs. Gavalla, Byrnes, and Fine for matters concerning their official duties or official status during their tenure with FRA. Should you subpoena the witnesses, please provide via overnight delivery a copy of each subpoena to me at 1120 Vermont Ave., N.W., Ste. 7000, Washington, D.C. 20005 (fax no. (202) 493-6068)) .

Second, please read my earlier response to your FOIA inquiry.

-----Original Message-----
**From: Harry Zanville [mailto:harrywz@cox.net]**
**Sent: Thursday, August 11, 2005 3:03 PM**
**To: Kaplan, Jonathan**
**Cc: chas@citilink.com; cadmin@mninter.net**
**Subject: Re: Bauer v BNSF**


Jon:

I have not heard from you concerning my last email yesterday regarding, *inter alia,* my suggestion that we have the ex-FRA employees request that FRA not provide them representation. Your lack of response to the last email and your earlier language to me indicated that FRA has set its feet in concrete on this matter.

While we all are sincerely disappointed that Mr. Lindsay and Mr. Haley do not have the willingness to come out and defend the FRA's position, we are looking forward to seeing and working with Charles Larsen, the U.S. Attorney for the N.D of Iowa, who is a really good person and an excellent lawyer.

We have not decided yet whether the three ex-FRA employees will testify in person or via video-teleconference. I doubt if they need subpoenas. We may be willing to issue them subpoenas solely as a matter of cooperation with you if that is the procedural vehicle you need for your attack.

You did not refer to the FOIA request status --- it is important to us so we'd appreciate knowing about it.

Harry Zanville

**From:** Harry Zanville [harrywz@cox.net]
**Sent:** Thursday, August 11, 2005 6:40 PM
**To:** Kaplan, Jonathan
**Cc:** chas@citilink.com; Rayllneweb@aol.com; cadmin@mninter.net
**Subject:** Re: Bauer v BNSF

Jon: We want to thank you for your patience and courtesy. For clarity, this is what we understand to be the situation:

(1) There are currently three ex-FRA senior level employees who are expected to testify voluntarily how and why the FRA is not doing its job and to explain the consequences;

(2) the FRA does not want these ex-FRA senior level employees to testify because it may embarrass the FRA and/or its leadership;

(3) the FRA has no intent to "represent Messrs. Gavalla, Byrnes, and Fine for matters concerning their official duties or official status during their tenure with FRA" in order to protect those ex-employees; and

(4) the sole reason the FRA claims the right to "represent" these ex-employees is to try to obstruct the truth from being made public.

Based on your prior statement that the US Attorney for the ND-IA will handle this, I plan to contact Charles Larsen tomorrow morning to discuss the procedure he will being using to try to obstruct the testimony of Messrs. Gavalla, Byrnes, and Fine.

Please let me know if you believe there is any reasonable chance that the FRA will answer the FOIA requests in part or in whole prior to the end of August, 2005.

Harry Zanville